**YELLOW CAB CO. v. UNDERWOOD.**
**No. 11007.**

Court of Civil Appeals of Texas. Galveston.
July 11, 1940.

Rehearing Denied Oct. 3, 1940.

Wood, Morrow, Gresham & McCorquodale, M. S. McCorquodale, and Jno. C. Williams, all of Houston, for appellant.

Vinson, Elkins, Weems & Francis and Frank G. Dyer, all of Houston, for appellee.

CODY, Justice.

Appellee sued appellant for damages in the sum of some $40,000, alleged to have been sustained by him when a passenger in one of appellant's taxicabs which collided with an ice truck at the intersection of Caroline Street and Polk Avenue in Houston, on March 7, 1937. The ice truck was driven by John Mellar.

The details of appellee's pleadings are not relevant on this appeal. In addition to suing appellant, Yellow Cab Company, appellee also sued John Mellar, who was driving the ice truck with which the taxicab collided: he also sued one John A. Darby, doing business under the trade name of Dixie Ice Company, on the theory that John Mellar was an employee of Darby; but as Darby was, at the conclusion of the trial, by a peremptory instruction of the court discharged from the case, and no objection is made to such discharge, it is unnecessary here to take further notice of him.

Appellant answered by a general demurrer; a special exception, the details of which are not here relevant; a general denial; and by way of special answer admitted the ordinance, pled by appellee, relating to the green, amber and red signal traffic lights, which function at certain street intersections in the City of Houston, inclusive of the intersection of Caroline Street and Polk Avenue; appellant further pled that the collision was caused by the negligence of John Mellar, the driver of the ice truck; appellant also pled that appellee was guilty of contributory negligence.

As John Mellar was exonerated by the judgment of the court, based upon the findings of the jury, and no objection is here urged against such action, his pleadings will not be given.

In answer to special issues, the jury found:

1. That immediately prior to the collision the operator of the Yellow cab was driving at a rate of speed in excess of 20 miles per hour.

2. That such driving was a proximate cause of the collision.

3. That immediately prior to the collision the operator of the Yellow cab was driving without keeping a proper lookout.

4. That such failure to keep a proper lookout was negligence, as that term was defined.

5. That such negligence was a proximate cause of the collision.

6. That John Mellar, the driver of the ice truck, was not driving in excess of 20 miles per hour at the time of the collision.

8. That John Mellar did not fail to keep a proper lookout.

13. That the driver of the Yellow cab drove the cab into the intersection of Caroline Street and Polk Avenue while the traffic light facing him was showing red.

14. That the same was a proximate cause of the collision.

14A. That the operator of the truck, John Mellar, did not drive into the intersection against the red light.

16. Appellee did fail to warn the driver of the Yellow cab to drive slower.

17. But such failure was not negligence.

22. Appellee did fail to warn the driver of the Yellow cab that the traffic light was showing red.

23. But such failure was not negligence.

25. Appellee did fail to warn the driver of the Yellow cab that the ice truck was proceeding into the intersection.

26. Such failure was not negligence.

28. Immediately prior to the collision appellee did fail to warn the driver of the Yellow cab that the ice truck was proceeding at the rate of speed at which appellee believed said truck to be proceeding.

29. But such failure was not negligence.

31. That the act of the driver of the ice truck, immediately prior to the collision, in proceeding at the rate of speed at which he was then proceeding, with respect to the Yellow Cab Company, did not constitute a new and independent cause of the collision.

32. That the act of the driver of the ice truck immediately prior to the collision in question in proceeding into said intersection of Polk Avenue and Caroline Street at the time when he proceeded into said intersection, with respect to the defendant Yellow Cab Company, did not constitute a new and independent cause of the collision.

33. That the act of the truck driver in attempting to drive across the intersection in the manner in which he was driving the

truck, with respect to the Yellow Cab Company, did not constitute a new and independent cause of the collision.

35. The red signal lights at the intersection were operating correctly.

38. The driver of the truck drove into the intersection at a time when the green traffic light was facing him.

41. The collision was not the result of an unavoidable accident.

(The two remaining issues deal with the amount of damages.)

Appellee's evidence showed that on January 23, preceding March 7, 1937 (the date of the collision in connection with which appellee brought this suit for damages), he had been involved in another automobile collision, when he drove into a concrete pillar, and fractured his left knee cap, which caused him severe pain, and to be confined in a hospital, and required his leg to be kept in a cast until March 5th, two days before the collision which is the subject matter of this suit. And at the time of the collision, March 7, 1937, appellee had not yet returned to work, and was still on crutches. On the occasion in question appellee was going out to dine with friends. He told the cab driver that he was a little nervous and would appreciate it if he would take it easy. The collision is, we believe, sufficiently described by the jury's findings given above. As a result of the collision, appellee was thrown against the front of the back seat and due to his crippled knee he fell backward, striking the back of his head against the back of the seat. He became semi-conscious. The pain in his left leg, head and back was severe. He was taken to the hospital, where he remained seven days; his leg swelled again for several weeks. After leaving the hospital he was confined in bed at home for ten days or two weeks. Headaches continued while at home; the headaches left in July (1937). The pain in the back continued until some time in September (1937). And at the time of the trial (May, 1939), he did not suffer from pain in his back or from pain in his knee. His hospital bill was $57.50. He was unable to work until the first part of May. His salary was $184 per month. There was evidence as to his nervousness and insomnia. His doctor bill was $75.

Appellant's first assignment is that the court erred in refusing to require the jury, in answering special issue No. 42, to award only such damages which, in the usual course of events and general experience, were likely to ensue, and which, therefore, might reasonably have been foreseen and anticipated by the appellant (defendant) at the time the acts in question were committed by the appellant. Special issue No. 42 is, quoting it: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the plaintiff, N. H. Underwood, for his injuries, if any, directly resulting from the collision in question, taking into consideration the following elements of damage and none other:

"(1) Physical pain suffered therefrom by N. H. Underwood, if any.

"(2) Mental Pain suffered therefrom by N. H. Underwood, if any.

"(3) The expense that N. H. Underwood has reasonably and necessarily incurred for hospital services as a direct result of the collision in question, if any.

"(4) The expense that N. H. Underwood has reasonably and necessarily incurred as a direct result of the collision in question, for doctors' services, if any."

■■ The jury was not, as appellant complains, turned loose by the form of the issue as framed to assess damages and consider any and all injuries directly resulting from the collision, without regard to whether the damages claimed were such that in the usual course of events and general experience were likely to ensue, and which, when the act was committed, might reasonably have been foreseen and anticipated. But, on the other hand, the jury was limited to the elements of damage enumerated at the conclusion of special issue No. 42. And these enumerated elements of damage are such as are likely to ensue from a collision according to the usual course of events and general experience, and such as the driver of the Yellow cab was by law reasonably bound to have foreseen, and anticipated. In Hughes v. City of Austin, 12 Tex.Civ.App. 178, 33 S.W. 607, 609, it is said: "When an action is for a tort committed, the actual damages recoverable are such as will compensate the injury, and which arise as the necessary result of the act complained of, or that, under the particular circumstances, may arise as the natural and probable consequences of the wrong committed. [authority] The theory of recovery of consequential damages that arise from torts is not based upon injuries and damages that are within the contemplation of the wrongdoer when the tort is committed, but recovery may be had for all damages which are

the natural and proximate consequences of the wrongful act, and as to such consequences he is put upon contemplation of the results that are likely to follow from his conduct, although in fact he may have no actual knowledge that such consequences may result." And see Humble Oil & Refining Co. v. Wood, Tex.Com.App., 292 S.W. 200; and 13 Tex.Jur. at page 98. It will be noted that the special issues first limited the jury to the assessment of damages, if any, to those "directly resulting from the collision in question", and then further limited the assessment of damages to the enumerated elements. Had the hospital to which appellant had been taken burned down, and appellee suffered burns, and sought to recover damages for such burns as a direct result of the collision, some such limitation in connection with special issue No. 42 as appellant is contending for might not be out of place. But special issue No. 42 is not subject to complaint that it "wholly fails to include anywhere therein, and there is not included anywhere in the court's charge with respect to damage, the element of foreseeability." The first assignment of error is accordingly overruled.

The appellant's second assignment of error makes the same complaint in connection with special issue No. 43, that the first assignment makes in connection with special issue No. 42. It is likewise overruled.

Appellant assigns error to the refusal of the court to declare a mistrial during the opening argument of appellee's counsel, when, after having quoted special issue No. 31 to the jury and having read them the court's definition of the term "new and independent cause", he made the following argument:

"In other words, gentlemen, if you find— if you have answered—let us just take—if you have answered Special Issue No. 5, if you say 'We do find the cab driver was not keeping a proper lookout', and if you answer that that was negligent and that such negligence was a proximate cause of the collision, you cannot find that the speed of the truck was a new and independent cause of the collision. Now, why do I say that?"

At this point the court sustained the objection that the argument informed the jury as to the effect of their answer to the issue, whereupon, appellee's counsel continued: "The court tells you in his definition of proximate cause that it must be a cause unbroken by any new and independent cause. In other words, if you find that the cab driver was guilty of any of these acts of negligence and that act was a proximate cause, by finding that you find that there was no new and independent cause." And at this point appellant renewed its objections, and moved for a mistrial. The court sustained the objection but refused to declare a mistrial.

Now it is clear that the argument did inform the jury that if they answered that the cab driver was guilty of acts of negligence which proximately caused the collision, it would be inconsistent or conflicting to answer that the collision was the result of a new and independent cause. And that the jury shall not return conflicting answers into court is a result necessary to any trial, and one devoutly to be desired. Texas Emp. Ins. Ass'n v. Crosby, Tex.Civ. App., 123 S.W.2d 743, 745. In the authority just named, the court said that it was not prejudicial error for counsel to warn the jury against the pitfall of conflicting answers. "If the jury had fallen into it, the trial judge would have been obliged to reject their verdict, advise them of the conflict, direct them to retire and further consider their answers, and reconcile the conflicts." See St. Louis, S. F. & T. Ry. Co. v. Kaylor, 291 S.W. 216, 218, where the Supreme Court said: "Trial courts should, in a preliminary way, read proposed answers being returned by juries to special issues. If a conflict is discovered by the court, he should state to the jury that the answers are conflicting and, in their present status, would not warrant an entry of any judgment in the case. With that information, the jury should be retired for further consideration of the issues and their answers thereto. But the court should not indicate to the jury, or permit counsel to do so, that it would be to the interest of one of the parties to have a certain issue answered in a certain way." After all, in answering special issues, a jury is not put on trial by a medieval ordeal, or expected to play blindman's bluff, and see if they can by chance win their way to a receivable verdict. If it be the duty of the court to instruct them to the extent that they shall not return conflicting answers, we can see no objection to counsel pointing out what would constitute conflicting answers, under the court's instructions, designed to prevent conflicting answers. At any rate, if counsel does no more, in arguing special issues to a jury, than to point out conflicts in answers which would prevent the court

from receiving a verdict, they have not committed a reversible error. We do not think our holding here is necessarily in conflict with the holding of the Texarkana Court of Civil Appeals in Traders & General Ins. Co. v. Offield, 105 S.W.2d 359, for as we read that opinion the court regarded what was there being done in argument as tipping the jury off as to the effect of their answers, and giving them the cue as to how to answer such issues. If, however, the Texarkana court meant to hold that it is reversible error for an attorney, in arguing the court's instructions to the jury, which is designed and intended to elicit answers that are not in conflict, to merely indicate the nature of conflicting answers, without giving the cue how to answer in order to find for one side or the other, then we are compelled to follow the San Antonio Court. In any case, the court sustained the objection, but merely refused the motion for a mistrial. We overrule appellant's third, fourth, and fifth assignments of error.

Appellant's sixth assignment of error is that the damages awarded by the jury are excessive. The award certainly impresses us as being liberal, but we are unable to say they are excessive, that they require a reversal of the case.

█ We are unable to see the force of appellant's seventh assignment, which complains of the definition of unavoidable accident given in connection with special issue No. 41, reading: "In this connection you are instructed that by the term 'unavoidable accident' is meant the unforeseen and unanticipated happening of an event occurring without either the plaintiff, N. H. Underwood, or the driver of the truck, or the driver of the Yellow Cab, being guilty of negligence in doing or permitting to be done, or omitting doing anything, that proximately caused the collision." If we understand appellant, he contends that, by authority of Dallas Ry. & Terminal Co. v. Price, 131 Tex. 319, 114 S.W.2d 859, it was error to include the mention of Mellar in the definition. If we understand appellant's contention, the inclusion of the name of Mellar in the definition deprived appellant of the submission of an issue as to whether the accident was unavoidable as between itself and appellee, although the negligence of the truck driver may have caused the accident. Every possibility of negligence proximately causing the collision other than that of the driver of the taxicab was duly submitted. So we fail to see how appellant could be damaged by the definition, the more so as we fail to find evidence of the accident being unavoidable. Certainly there is no evidence of it being unavoidable as between appellant and appellee. The seventh assignment is overruled.

█ In its eighth assignment of error appellant complains that the manner and form in which the court submitted special issue No. 2 amounted to a comment upon the weight of the evidence, in that it assumed that appellant's cab was being driven at a rate of speed in excess of twenty miles per hour immediately prior to the collision. Special issues Nos. 1 and 2 are framed to go together. They read literally:

"Special Issue No. 1. Do you find from a preponderance of the evidence that immediately prior to said collision the operator of the Yellow Cab was driving same at a rate of speed in excess of 20 miles per hour?

"Answer 'We do' or 'We do not'."

"Special Issue No. 2. If you have answered the next preceding special issue 'We do', and only in that event, then answer:

"Do you find from a preponderance of the evidence that such driving of said cab was a proximate cause of the collision in question?

"Answer 'We do' or 'We do not'."

Appellant contends that the court, instead of employing the form used in special issue No. 2, should have used this form: "If you have found that such cab was being driven at a rate of speed in excess of twenty miles per hour, and only in that event, then answer," etc.

The assignment is overruled. The meaning of both forms are identical. Anyone capable of understanding, and following, and not being misled by the form advocated by appellant, would, it seems clear to us, be equally capable of understanding, and following, and not being misled by the form used by the court. The form used by the court in special issue No. 2 makes no assumption as to how the jury should or would answer either special issue No. 2 or special issue No. 1.

The remaining assignments of error are but repetitions, with respect to other issues, of the same complaint as that urged in the foregoing assignment of error; and if we are correct in overruling the foregoing assignment, appellant's remaining assignments are likewise without merit.

No reversible error having been committed, the judgment of the court below ought to be affirmed, and it is so ordered.

Affirmed.