TRICE CONTRACT CARPETS AND FURNITURE COMPANY, Inc., Appellant,

v.

Olion J. GILSON et al., Appellees.

No. 13441.

Court of Civil Appeals of Texas.

Houston.

Nov. 5, 1959.

Rehearing Denied Dec. 3, 1959.

Bryan & Patton, Joseph E. Hensley, Houston, Dalton & Moore, T. M. Dalton, Jr., Dallas, for appellant.

The Kempers, T. M. Kemper, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellant against Olion J. Gilson, J. B. Butler and Gilson Floor Coverings, Inc., to recover from said parties jointly and severally damages resulting from loss by fire of carpets and floor coverings stored in a building rented by appellant from appellee, Olion J. Gilson. Appellant alleged that the fire was caused by the negligence of J. B. Butler, a servant and employee of the other two defendants, in setting fire to grass near

the building in which appellant had stored its carpets and floor coverings.

Appellant has not appealed from the court's instructed verdict in favor of Gilson Floor Coverings, Inc., but has perfected its appeal from the court's judgment on jury verdict that it take nothing against appellees, Olion J. Gilson and J. B. Butler.

Appellant, in Points 1, 2, 7 and 8, asserts that the findings of the jury in response to Special Issues Nos. 2 and 12 were contrary to the undisputed evidence, and also so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

In answer to Special Issues Nos. 1 and 2 the jury found that J. B. Butler set fire to grass, weeds and trash on the premises and on the occasion in question, but that such act was not negligence.

To Special Issue No. 12 the jury found that the failure of appellees to warn appellant that a grass fire would be started on the premises in question was not negligence.

The testimony showed that appellee Gilson owned a tract of land in the City of Houston fronting east on Greely Street some 200 feet and running back in a westerly direction for depth approximately 125 feet. The small building rented to appellant was 20 feet in width and 50 feet in depth, fronting 20 feet on Greely Street but set back more than 60 feet from the street. Such building was located about 3 feet from the south boundary line of the property and the north boundary of a railroad right of way, and approximately 20 feet from the nearest rail of the railroad track. The back of this building was approximately 3 feet from the west boundary line of the property in question. About 3 feet north of this building was a large building approximately 100 feet in depth, fronting 50 feet on Greely Street. To the north of the large building was an unimproved space sometimes used for storage of building material. The small building had a concrete foundation and aluminum siding nailed on 2 X 2 inch studding. The large building, which was vacant, was constructed of galvanized iron.

Appellee Butler testified by deposition that Gilson told him to clean up the place and cut the grass on the premises in question. He started to work on Monday morning. He cut the grass with a sickle and a hoe and then raked it up. He raked it into two windrows north of the large building. He also piled some of the grass in a stack on the south boundary line of the property approximately 30 feet east of the southeast corner of the small building and approximately 90 feet south of the nearest windrow north of the large building. The windrows running in an easterly direction towards Greely Street were about 30 feet in length and the most southerly was 25 feet north of the large building. Butler testified that he set fire to the windrows north of the large building and sat there watching the fire continuously. He testified positively that he never set fire to any grass south of the large building; that after he had watched the fire for some 15 minutes, his attention was called by a man to the fire along the south side of the premises. A woman who lived in the back was turning a water hose on the little building; Butler took the hose and began pouring water on the small building. He saw the fire in some leaves scattered around. Finally something went "boom" and that was all, the small building caught fire. The back end and inside of the large building burned some, but it was still standing after the fire.

The stack of grass on the south edge of the premises was located about 30 feet or more east of the small building and 20 feet or more south of the large building. Butler further testified that he did not set fire to said pile of grass; that afterwards such stack of grass caught fire but that he did not set it afire and that the

only fire that he saw there was the fire that was in the windrows and that there wasn't any fire between the windrows and the building that caught on fire; that he didn't know what caught the building on fire; that he didn't see the fire spreading across the ground and that it couldn't get across there.

No witness testified as to how the small building caught on fire. Appellee Gilson had not been on the premises during the time the grass was being cut, nor did he arrive there until after the fire on Thursday. J. B. Selman testified that he walked out on the railroad tracks and watched the fire; that when he went out there the "whole business was on fire, the yard and everything there"; that the wind was blowing pretty hard from the south or southeast; that he didn't know how the fire started; that the fire was all over when he got there, and he didn't know anything about it until he heard it popping.

Lewis Walter Ely, No. 3 District Fire Chief, testified that he didn't know at what spot the fire started originally; that when he arrived on the scene he circled the big building; there was grass burning to the north, also grass burning toward the little building and on the south side of the little building; that he asked Butler if he had been burning grass on the south side and Butler replied "Yes" and told him the fire probably got away from him, that he had not been on that side of the building while he had been working on the north side. The Fire Chief's report was introduced in evidence and gave as the cause of the fire, "J. B. Butler, negro, burning grass. Set Bldg. on fire."

It is evident that the jury believed the testimony of Butler that he did not set fire to the stack of grass on the south or east of the small building. The Fire Chief's testimony merely went to Butler's credibility. No witness except Butler testified as to the location of the fire he started and no one knew where the fire

originated that caught the small building on fire. It seems probable that the fire in the windrows did not set fire to the small building since the wind was from the southeast and not blowing in the direction of the small building but away from it.

The jury had the right to believe Butler when he testified that he did not set fire to the stack of grass southeast of the small building, and that the only fire he set was in the windrows north of the large building. The jury, having evidently concluded that Butler had set fire only in the windrows and that such fire was so located that it would not spread to the buildings with the wind blowing from the southeast, undoubtedly felt that Butler was neither negligent in setting such fire nor in failing to notify appellant that such fire would be started. We have examined the entire record and the testimony both favorable to the jury's findings and that militating against such findings, and have concluded that the jury's findings that appellees were not negligent in such particulars are not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Banks v. Collins, Tex., 152 Tex. 265, 257 S.W.2d 97; Continental Bus System, Inc. v. Biggers, Tex.Civ.App., 322 S.W.2d 1, ref., n. r. e; Dyer v. Sterett, Tex.Civ. App., 248 S.W.2d 234.

Appellant's Points 3, 4, 5 and 6 assert that there is no evidence supporting the jury's findings to Special Issues Nos. 4 and 8, and such findings are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

To Special Issue No. 4 the jury found that Butler did not fail to keep such watch over the fire as an ordinarily prudent person would do. In answer to Special Issue No. 8, the jury found that Butler did not fail to give warning of the spread of the fire he had set.

It is true that Butler did not deny the statement allegedly made by him to Fire Chief Ely that he had set fire to the grass at the south end of the premises. Butler, however, did not testify at the trial other than by deposition previously taken. It does not appear why he did not testify in person at the trial.

We do not agree with appellant that the alleged admission made by Butler to the Fire Chief was binding upon him. He testified under oath in his deposition just to the contrary of what the Chief stated he had said. The case of Texas & Pacific Ry. Co. v. Wood, 145 Tex. 534, 199 S.W. 2d 652, and the other cases cited by appellant, are not in point. In those cases the court held that the testimony of a party to a suit and admissions made by him therein must be construed as binding upon him and not merely as raising issues of fact. At no time in his testimony did Butler admit directly or indirectly that he set fire to any grass other than that in the windrows.

We think there is ample testimony supporting the jury's finding that Butler did not fail to keep such watch over the fire as an ordinarily prudent person would do. He testified that he sat and watched the fire continuously and that there wasn't any fire between the windrows and the building that caught on fire. We have concluded that the finding of the jury to Special Issue No. 4 is not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and unjust. In re King's Estate and other authorities, supra.

Special Issue No. 8 reads as follows: "Do you find from a preponderance of the evidence that the defendant, J. B. Butler, failed to give any warning of the spread of the fire that he had set?" The jury answered, "We do not." They did not answer the next two issues inquiring as to negligence and proximate cause, which were conditionally submitted.

To previous issues the jury had found that Butler had set fire to cut grass, weeds and trash on the premises, but such act was not negligence, and that Butler had not failed to keep such watch over the fire that he had set that a person of ordinary prudence would have kept. The jury also found that Butler did not burn trash at a distance less than 20 feet from the smaller building on the premises.

No issue was requested or given inquiring as to whether Butler set fire to the grass south or east of the small building, nor was any issue requested or given inquiring as to whether the fire which Butler set in the windrows spread.

Special Issue No. 8 is duplicitous. An affirmative answer thereto by the jury would in effect constitute a finding that the fire which Butler set had spread. The jury undoubtedly believed Butler, in view of their findings to the other issues on primary negligence, and hence felt that the fire which Butler set in the windrows, being the only fire that he set, did not spread. He testified that he continuously watched such fire and that there was no fire between the windrows and the small building. The issue in question was appellant's issue. Since it in effect submitted two questions to the jury, the jurors may well have concluded, in answering that Butler did not fail to give any warning of the spread of the fire that he had set, that they were finding that the fire Butler set did not spread. In other words, the jury may have placed the emphasis upon whether the fire spread, rather than the giving of a warning of the spread of a fire *which had not spread*. Butler testified that after the small building caught on fire, he went to the corner house to call the fire department, but nobody was there. When he got back to the fire the firemen had already arrived. There is no showing that any harm resulted from Butler's failure to give warning since the Fire Department had already been notified.

In view of the duplicitous nature of the issue, we cannot say that the jury's finding is so contrary to the great weight and preponderance of all the evidence as to be clearly wrong and unjust, especially since in answering such issue the jury may well have thought that it was finding that the fire which Butler set had not spread. If such fire did not spread, there was no duty on Butler's part to give any warning— he could not warn of a non-existent condition. Since appellant did not request a separate issue on whether the fire spread, such omitted issue will be deemed as found by the Court in such manner as to support the Court's judgment. Rule 279, Texas Rules of Civil Procedure.

In view of our holding, and of the jury's findings exonerating appellees of any negligence, we see no object in discussing appellant's points relative to contributory negligence on its part and as to whether appellee Butler was a servant or independent contractor. It is sufficient to state that the jury did not convict appellant of contributory negligence in any particular. The jury having found no negligence on the part of appellees and no contributory negligence, found, we think not improperly, that the fire which destroyed appellant's property was the result of an unavoidable accident.

■ Appellant contends that the answers of the jury indicate the jury was biased or prejudiced. We do not agree. We find no evidence of prejudice on the part of the jury against appellant, or bias in favor of appellees. It is true that the jury made no answers to the damage issues. Undoubtedly the rugs and floor coverings had some value. The jury did not find that they did not. They merely failed to answer the issues inquiring as to values. This is not the equivalent of finding no value.

The record does not show that counsel for appellant objected to the Court accepting the verdict on the ground that such issues had not been answered. We assume, therefore, that no objection was made. If no objection was made at the time, we think any error in such connection was waived. Moreover, any such error would be immaterial in view of the fact that the jury acquitted appellees of negligence with respect to the fire. Hence there would be no liability on their part regardless of whatever value the rugs and floor coverings may have had.

■ Appellant asserts that the jury was guilty of misconduct. It moved for a new trial on the ground, among others, that some jurors expressed opinions "that there was a possibility that carpets made of nylon and rayon acetate would cause an explosion when confined in a small tin-roofed building and might otherwise cause a fire." Juror, Mrs. Bressler, testified that one of the jurors made such statement, but she believed it was in the jury box where she heard it. She also testified that someone suggested that Mr. Fowler, or some of his men, going in or out of the premises, could have dropped a lighted cigarette. She thought that statement also was made in the jury box. There was evidence that some of appellant's employees had been in the small building in question on the morning of the day of the fire. Mrs. Bressler also testified that she heard juror, Mrs. Haxthausen, mention that a person cannot always control the actions of a yard man. She thought that occurred at lunch. This latter statement, if made, could only be material in passing upon issues inquiring whether Butler was a servant or an independent contractor. That question is immaterial in view of the finding of the jury on the negligence issues.

Juror Dumesnil testified that he recalled some juror discussing the possibility of explosion of nylon and rayon acetate goods confined in a small tin-roofed building, and also a lady juror saying such goods in a store would cause one's eyes to burn. He testified, "But we decided we had better not go into it because we were not

concerned with it." He also testified as to the possibility of a fire from a lighted cigarette, but stated, "But again we said that we were not concerned with it because it was not brought out in court and there was no testimony of any kind." He further testified that they discussed Butler quite a bit but tried to confine the discussion to what was said in the deposition, and that it was not for them to decide whether he was lying or not, there was no testimony to that. To questions asked by the Court, he testified that every time something was brought up that should not be, they stopped it right there and tried to keep their discussion on the evidence they heard from the stand, and that when the statement was made about the explosion or the cigarette, they stopped it and discontinued talking about it. On cross-examination he stated that when the lady first spoke of going into a store and her eyes burning, he thought two or three jurors stopped her right there, but later after the issues were settled she just had to tell them about her experience.

█ Improper conduct which occurs after the jury has answered issues which might have been affected thereby is not reasonably calculated to affect the verdict and is not reversible error. Roy L. Jones Truck Line v. Johnson, Tex.Civ.App., 225 S.W.2d 888, ref., n. r. e.; Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143.

The jury foreman, James T. Wehunt, testified that every time he thought the jury were going out of the record he called their attention to the court's instructions. To questions asked by the Court, he testified that whenever any such matters were discussed, that he requested the jury to stop and it did stop. He also testified that he did not think there was any discussion on the fact if Butler was lying or "about his credibility of the statement."

It is apparent that there was some conflict in the testimony of the witnesses as to just what occurred and where. Mrs. Bressler thought that the statements made were not in the jury room or during the deliberation of the jury. Appellant has not assigned as error any misconduct that might have occurred outside the jury room. Dumesnil, on the other hand, testified as to practically the same statements that Mrs. Bressler testified to, but according to his testimony the statements were made in the jury room. Dumesnil also testified that it wasn't up to them to decide whether Butler was lying. Wehunt, however, testified that he did not think there was any such discussion.

█ Whether or not any jury misconduct occurred is a question of fact. If misconduct is established, then its effect is a question of law. Harris v. Levy, Tex.Civ. App., 217 S.W.2d 154; Scoggins v. Curtiss & Taylor, 1949, 148 Tex. 15, 219 S.W.2d 451.

█ Since there is a conflict in the testimony of the witnesses as to whether there was any misconduct, and the Court made no express findings of fact or conclusions of law, this Court will presume from the order overruling the motion for new trial that the Trial Court found from a preponderance of the evidence that no jury misconduct did in fact occur. Myers v. Thomas, Tex.Civ.App., 182 S.W.2d 266, and authorities cited, reversed on other grounds 143 Tex. 502, 186 S.W.2d 811.

█ The statements alleged to constitute misconduct on the part of the jury, if such occurred, were casual, passing remarks which were almost immediately halted by the foreman or other jurors. The mere mention of improper remarks, followed by a prompt admonition that such matters cannot be considered, is not such misconduct as requires reversal. Bradley v. Texas. & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861; St. Louis Southwestern Ry. Co. v. Gilpin, Tex.Civ.App., 73 S.W.2d 1054, writ ref.; Putman v. Lazarus, Tex., 293 S.W.2d 493.

We have concluded that appellant has failed to show that any alleged misconduct was calculated to cause and probably did cause the rendition of an improper verdict and judgment. Rule 434, T.R.C.P. It does not reasonably appear from the evidence on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to appellant. Rule 327, T.R.C.P.

■ Appellant, in its 36th point asserts that the jury was prejudiced against it by the testimony of appellees' witness, Jack F. Fowler, to the effect that appellant's carpets were insured.

Counsel for appellees asked Fowler the following question:

"Q. All right, I will show you what has been marked Plaintiff's Exhibit No. 20 and ask you if you recognize your handwriting on that, just tell the jury what that is first—and then tell us—A. It says 'Expense Report No. 2 on salvage—' It has, it says, 'Insure carpets' or something there, I can't read it."

Appellant made no objection to the question or answer at the time given. The statement of facts shows that the witness merely misread the word "burned" as "insure" in trying to read said exhibit. An examination of the exhibit which was handwritten, shows that the word "burned" might readily be misread in good faith as "insure." There is nothing to indicate that the mistake was not an honest one. Indeed, the witness stated in the same breath, "I can't read it." Appellant does not so much as suggest that the witness knew or suspect-

ed that plaintiff's carpets were insured or that counsel for appellees asked any improper question in an effort to show that the same were insured. The word "insure" was mentioned only the one time. There is no evidence that any mention of it occurred in the jury room. Furthermore, the jury had the exhibit with them during their deliberations so that the actual language of such exhibit was readily available to them.

■ Not every casual mention of the word "insure" requires either a mistrial or a new trial. Allmon v. Texas Electric Service Co., Tex.Civ.App., 242 S.W.2d 806, ref., n. r. e.; Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759; Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938; Amberson v. Woodul, Tex.Civ.App., 108 S.W.2d 852, writ dism.; Stein v. Boehme, Tex.Civ.App., 302 S.W.2d 663.

In the instant case there was no showing of any intentional injection of insurance into the case by counsel for appellees. The word "insure" was casually and inadvertently spoken. It is not shown that the jurors heard the mention of the word, and certainly it is not shown that any consideration was given to it. We are of the opinion that in this case the inadvertent reading of the word "burned" as "insure" was not calculated to cause nor did it probably cause the rendition of an improper verdict and judgment. Rule 434, T.R.C.P.

Appellant's points are all overruled and the judgment of the Trial Court is affirmed.