Arturo Garcia CANTU and Double "B" Distributing Company, Appellants,

v.

Maria DEL CARMEN PENA, Appellee.

No. 16531.

Court of Appeals of Texas, San Antonio.

April 13, 1983.

Rehearing Denied May 13, 1983.

John E. Lewis, McAllen, Royal H. Brin, Jr., Dallas, for appellants.

Frank R. Nye, Jr., Rio Grande City, Hubert L. Stone, Jr., Guy Allison, Corpus Christi, for appellee.

Before CADENA, C.J., and ESQUIVEL and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiff, Maria del Carmen Pena, filed this suit to recover damages for personal injuries resulting from an automobile accident which she alleged was proximately caused by the negligence of defendant, Arturo Garcia Cantu, who, at the time of the collision, was acting within the scope of his employment by defendant, Double "B" Distributing Company. The jury awarded plaintiff $500,000.00 and defendants appealed.

The accident occurred on September 30, 1974. Plaintiff was taken to the emergency room of a nearby hospital, complaining of pain in her neck and lower back. Between the date of the accident and the date of trial several years later, plaintiff consulted four doctors, all of whom prescribed medication for pain and to control inflammation.

The parties stipulated as to "liability" and no evidence was introduced, or issues submitted, concerning the cause of the collision or the relationship of Cantu to Double "B". The only issue submitted required the jury to find the amount of money which would fairly and reasonably compensate plaintiff for the injuries which "resulted from the occurrence in question". The phrases "if any" and "from the preponderance of the evidence" were duly included in the issue submitted.

Defendants objected to the damage issue as submitted because it did not require the jury to find that the injuries or damages were proximately caused by the accident in question. Included in the objection was a request that the court include in the charge the usual definition of "proximate cause".

The issue submitted was taken from State Bar of Texas, 1 Texas Pattern Jury Charges § 11.03 (1969). The suggested issue is followed by a comment pointing out that "proximate" or "proximately" are omitted from the issue because foreseeability of the consequences is unnecessary in the "ordinary case" where injuries are sustained as a result of the accident.

Defendants, by stipulating "liability", confessed not only that Cantu was guilty of negligence attributable to Double "B", but also that such negligence was a proximate cause of the accident. Stated differently, defendants confessed that Cantu was negligent, that such negligence was attributable to Double "B", that the negligence of Cantu was a cause in fact of the accident, and that the accident was a foreseeable result of such negligence, since in the absence of causation in fact and foreseeability, negligence does not result in liability. *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex. 1975).

The Texas courts have distinguished between foreseeability of a collision and foreseeability of injury to the occupants of the car involved in the collision, holding that if the collision was foreseeable no inquiry need be made concerning foreseeability of injury to the occupants of the vehicle. *Cowden Cab Co. v. Thomas,* 425 S.W.2d 886 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); *Yellow Cab Co. v. Underwood,* 144 S.W.2d 291 (Tex.Civ.App.—Galveston 1940, writ dism'd, judgmt. cor.). The issue sug-

gested in Texas Pattern Jury Charges merely adopts this rule.

It is true that the rule which eliminates the necessity for incorporating the element of foreseeability in the damage issue is limited to the "ordinary case". Thus, in *Underwood, supra,* the court said that if the hospital to which plaintiff had been taken had burned, causing injury to plaintiff, limitation of the damages to compensation for injuries "proximately" resulting from the accident "might not be improper". 144 S.W.2d at 294.

In the case before us, defendants contended that plaintiff was not injured in the accident and that her back problems were congenital. The presence of this factual dispute does not prevent this case from being the "ordinary case". The issue, in plain language, limited the award of damages to compensation for injuries received as a result of the accident. That is, the jury was limited to a consideration of injuries concerning which the accident was the "cause in fact", since event "B" cannot be the result of event "A" unless "A" is the cause in fact of "B". The statement in *Underwood, supra,* concerning injuries received by a plaintiff because of a fire at the hospital to which plaintiff was taken has no application here. In the hypothetical case referred to in *Underwood,* it could be argued that the injuries caused by the subsequent fire were a "result" of the collision because, "but for the accident", plaintiff would not have been in the hospital. In such a situation, it can persuasively be argued that the jury should be cautioned that only the foreseeable results of the accident may be considered, so that the damages awarded would not include compensation for injuries resulting from the unforeseeable subsequent fire at the hospital.

The record before us contains no hint that plaintiff suffered injury from an occurrence subsequent to the accident. Necessarily, results always follow causes. No reasonable person, when asked if "B" resulted from "A" would conclude that "B", which preceded "A", was the result of "A". Here, if the jury believed that plaintiff's

back problems predated the accident, they could not, without completely ignoring the language in which the issue was couched, conceivably conclude that the preexisting problems were the result of the subsequent accident.

The cases relied on by defendants are not in point. In *Melear v. Fairchild,* 278 S.W.2d 280 (Tex.Civ.App.—Amarillo 1954, no writ), the issue did not limit the jury to consideration of damages resulting from the accident. *Airline Motor Coaches, Inc. v. Guidry,* 241 S.W.2d 203 (Tex.Civ.App.—Beaumont 1950, writ ref'd n.r.e.) (opinion on motion for rehearing); *A.B.C. Storage & Moving Co. v. Herron,* 138 S.W.2d 211 (Tex. Civ.App.—Galveston 1940, writ dism'd, judgmt. cor.); and *Scott v. Gardner,* 159 S.W.2d 121 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.), do not hold that the element of foreseeability must be included in the damage issue. *Finck Cigar Co. v. Campbell,* 114 S.W.2d 348 (Tex.Civ.App.— Fort Worth 1938), aff'd, 134 Tex. 250, 133 S.W.2d 759 (1939), deals only with the propriety of including "negligence" in the damage issue. *Anderson v. Reichart,* 116 S.W.2d 772 (Tex.Civ.App.—Fort Worth 1938, writ dism'd) and *Standard Paving Co. v. Pyle,* 131 S.W.2d 200 (Tex.Civ.App.—Fort Worth 1930, no writ), properly condemned damage issues which did not limit compensation to damages for injuries resulting from the accident. These cases deal with cause in fact, not with proximate cause.

In *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), plaintiff pleaded several grounds of recovery, including one seeking triple damages resulting from defendant's deceptive trade practices. The issue relating to damages for mental anguish was in the same form as that submitted by the trial court in this case. The Supreme Court, holding that the form of submission was improper, said:

Since only those damages for mental anguish which resulted from the . . . deceptive trade practice are to be trebled, and since the issue . . . on mental anguish did not inquire as to the amount of damages, if any, which were caused only by the

violation of the Act after its effective date, the court of civil appeals correctly held that the special issue respecting mental anguish was deficient.

554 S.W.2d at 671–72.

The problem in *Woods* did not involve the failure to incorporate the element of foreseeability in the damage issue. The defect resulted from the failure of the trial court to segregate the damages which were to be trebled from other damages. The issue was condemned because it failed to segregate the damages "caused by the violation" of the statute, not because it failed to limit the damages to those "proximately caused" by such violation.

The failure of the trial court to limit recovery to compensation for injuries proximately caused by the accident was not error. This necessarily means that the trial court did not err in failing to include a definition of "proximate cause" in the charge.

■ We also overruled defendants' contentions that there was no evidence or, in the alternative, insufficient evidence, to support the finding that plaintiff was injured as a result of the collision.

In considering a "no evidence" point, we must examine only that evidence which, when viewed in the light most favorable to the party who prevailed at the trial, supports the challenged finding, disregarding all evidence to the contrary. An "insufficient evidence" point requires that we consider all of the evidence, whether it supports the challenged finding or contradicts it. We may set aside the finding only if we conclude that it is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and unfair. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Plaintiff testified that she had not experienced no problems with her back prior to the automobile accident, despite the fact that she had engaged in hard labor such as picking melons, planting peppers and tomatoes, working in packing houses and working in warehouses. All of these occupations required bending and stooping as well as lifting heavy boxes. Prior to the accident she had not consulted doctors concerning troubles with her back since she had experienced no such problems. All of her back problems dated from the date of the collision.

Dr. Pechero, defendants' expert witness, testified that plaintiff's back problems resulted from the collision. Such testimony is clearly some evidence that plaintiff's injuries were a result of the collision. Dr. Pechero examined plaintiff four times. He found that plaintiff was suffering from a spinal sprain. He found no neurological damage, no change in the curvature of the spine, and no narrowing of the space between disks. Although he testified that plaintiff had a congenital defect of the spine and that her problem was aggravated because of her excessive weight, he nevertheless testified, as noted above, that her back problems resulted from the collision. Dr. Luis, an orthopedic surgeon, saw plaintiff several times and had examined her about three weeks before the trial. He found a narrowing of the interspace at L4–L5 and stated that, in his opinion, plaintiff was suffering from a herniated disk, although in an earlier report he stated that there was no abnormality of the disk. He testified that plaintiff's condition had steadily deteriorated. Both Dr. Pechero and Dr. Luis agreed that surgery would not improve plaintiff's condition, although it might prevent further deterioration. They both agreed that injury to a disk was permanent in nature. Dr. Pechero testified that if plaintiff's condition had worsened, the injury was permanent. Dr. Pechero had not seen plaintiff during the four years preceding the trial and could express no opinion concerning her condition at the time of trial.

While the evidence is to some extent conflicting, such conflicts were resolved by the jury in plaintiff's favor. The evidence, viewed in its entirety, does not justify the conclusion that the jury's finding that plaintiff suffered injury as a result of the accident is so against the weight and pre-

ponderance of the evidence as to be unfair. Defendants' contention that the award of damages is excessive is without merit.

■ Defendants assert that "even assuming that plaintiff does have pain from time to time and that there is some lessening of her ability to work, ... the award of $500,000.00 is not supported by the record and is highly excessive under the evidence here." Defendants' analysis of the evidence is somewhat one-sided, emphasizing only the testimony which tends to minimize the extent of the injuries and evidence that, at the time of trial, plaintiff was earning $2.90 a week and working 40 hours per week, while at the time of the accident she was earning $2.65 per hour and working only 40 hours per week. A review of all of the testimony reveals that defendants' view of the facts is somewhat optimistic.

Prior to the accident, and at the time of trial, plaintiff was employed as a kitchen worker at Community Action Kitchen. Prior to the accident she was able to lift heavy boxes and carry them around. After the accident, according to her supervisor, plaintiff was unable to lift anything, could not mop the floors, and could perform no duties which required bending. She constantly complained of pain in the back and often had to leave the job to go home, with a resulting loss in earnings. Her fellow workers complained that she was given only "easy" assignments and was not carrying her fair share of the load. Although plaintiff was aware of such complaints and attempted to do her part, she was unable to do so. For example, while she could wash the "middle part" of the windows, she was unable to wash the "bottom and top parts" because that involved stooping and reaching. Her daughter at times helped her perform the duties of her employment. She was finally relieved of most duties except those of washing dishes and calling out numbers at bingo games which were held for the elderly patrons of the agency.

Defendants' summary of the testimony omits mention of the fact that plaintiff testified that she began selling Avon products about a month before her injury and had realized an income of about $300.00 a month from such activity. After her injury she was unable to continue.

Dr. Luis testified that plaintiff would suffer from pain for a long time. The expert testimony also supports the conclusion that plaintiff suffers pain in her neck and left leg as well as her spine, and that there is a limitation of motion in her legs.

Plaintiff's testimony is incompatible with the defendants' conclusion that she suffers some pain "from time to time." Plaintiff testified that, since the accident, she has been in pain every hour of every day, although there is some relief when she takes her medication.

Before the accident, plaintiff was a "happy" person. When she came home from work she enjoyed gardening and doing yard work, and was able to do all of the cooking and housework for her family, including her disabled husband. Since the accident she is constantly depressed and can no longer take care of her home. Her daughter and daughter-in-law do all of the housework and her husband does all the cooking. She can no longer work in the yard or garden and stays home all the time because of the pain. When she returns home from work her daughter helps her take off her shoes and stockings and she immediately lies down in bed. On many occasions the pain was so bad that she had to be taken to a hospital emergency room for "shots". She cannot stoop or bend. She worries constantly because she realizes that her condition is getting worse instead of improving. She is "grouchy" with her family, including her children. Plaintiff's life expectancy at the time of trial was 21.5 years.

Dr. Pechero, whose testimony can be viewed as favorable to defendants and who believed that plaintiff, at the time he saw her, was suffering from a temporary back sprain, testified that at the time he saw her she should not have been working. As already pointed out, Dr. Pechero had not seen plaintiff for about four years prior to the trial and was ignorant of her condition at the time of trial. All of the testimony was to the effect that plaintiff's condition had

deteriorated since Dr. Pechero saw her and opined that she should not be working.

The evidence supports findings that plaintiff had a ruptured disk, that her condition was permanent, inoperable and deteriorating. Despite the fact that plaintiff has continued working at an hourly wage greater than that which she was earning at the time of her injury, it is clear that her earning capacity has been drastically impaired. She was forced to abandon completely her new career of selling Avon products, in addition to her regular employment, and even if we assume that her earnings from that venture would not have increased as she gained experience, it is clear that she has suffered an actual loss in earnings of at least $300.00 a month. During the five years preceding the trial, despite a double-digit annual increase in inflation, her hourly wage had risen only about 11%. At the time of trial the duties assigned to her had been so reduced that she was doing little more than calling out numbers at bingo games and carrying food to the elderly. The agency for which she worked relied on grants of federal money, and the testimony shows that funding for such programs had been cut to such extent that her employment would terminate the month following the trial. As her supervisor testified, in the city of Roma, Texas, the opportunities for women whose ability to work has been so severely curtailed are almost nonexistent.

At the time of trial, plaintiff had been in constant pain for five years. She was often without the funds necessary to allow her to purchase the medication necessary to gain even temporary lessening in her suffering. Before her injury she was a happy woman, enjoying gardening, taking care of her home and family, and realizing satisfaction from her work with the elderly, even though it frequently involved hard physical labor. These simple sources of enjoyment have vanished because of her lack of stamina, inability to work without pain and diminished functional ability. During the five years intervening between her injury and the date of trial she had become a depressed and grouchy person. Because of the realization, justified by the medical testimony, that her condition will, at best, not improve during the remainder of her life, there is no basis for supposing that her enjoyment of life will increase in the future. Her reduced capacity to function is starkly illustrated by the fact that she cannot even remove her shoes and stockings without the help of her daughter. It is impossible to devise a set formula for assigning a dollar value to the mental pain and anguish caused by such a great loss in capacity to enjoy life. The members of the jury, as they had a right to do, accepted as true the bleak picture of plaintiff's life as reflected in her uncontradictory testimony.

If we view the entire record, the conclusion that the award of damages is excessive cannot be justified. Such a conclusion would deny to that portion of the jury's verdict awarding compensation for past and future mental pain and anguish, the special deference to which it is entitled. *See V. Mueller & Co. v. Corley,* 570 S.W.2d 140, 146 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

■ In order to evaluate defendants' contention that the judgment must be reversed because of the interjection of insurance at the trial, it is necessary to set out the pertinent, if somewhat lengthy, testimony. Defendants' complaint is based on the following cross-examination by plaintiff's counsel of Dr. Pechero:

Q: Before we get into that, I would like to ask you some more questions about that. Without saying the man's name or who he works for, did you render a report, the first report that you rendered, was that rendered to a representative of the Defendant in this case, was it not?

A: I—

Q: You seem surprised, but I will ask you about that in a minute.

A: The first report?

Q: Without saying what the man's name was, or who he works for.

A: Yes.

Q: So, did you know right away that you were suppose to send the medical information to Mr. Lewis' side of the case. Can you tell by memory, doctor?

A: I don't know, '75, four or five years, no.

Q: I thought probably you had reviewed the records.

A: I have reviewed, without my files I am lost.

Q: Were you aware, when you first saw this lady that you were reporting to the people that had run into her?

A: Yes, because the person was insured with this company.

Q: Personal insurance with them? My question was that, doctor, if you can confine your answers to my questions I would appreciate it. Do appreciate it.

A: I will be glad.

Q: I'm not asking you who the people were. I just want to know if you also had dealings, were rendering information to the people that ran into her?

A: No, sir.

Q: You didn't know that right away?

A: No, sir.

Q: Have you written other reports for the same people, and for the same people, again, without saying who they are and what their names are? Are these people that you deal with frequently?

A: No, sir. Only one report.

Q: I don't mean just here, other cases.

A: Other cases?

Q: Written those same people.

A: Other cases, probably, yes.

Q: What was that?

A: Probably yes. For compensation.

Q: Hundreds of times?

A: Probably, yes.

At this point, defendants moved for a mistrial. The motion was overruled and no further objections were made.

Not every mention of insurance requires a mistrial or the granting of a new trial. *Trice Contract Carpets and Furniture Co. v. Gilson,* 329 S.W.2d 476, 483 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). Defendants contend that the vice in this case was not merely Dr. Pechero's use of the word "insurance", but the continued questioning by plaintiff's counsel, using "enigmatic terms which were bound to give rise to speculation by the jury and the conclusion that there was liability insurance, which was prejudicial and of possible harm." This contention is consistent with defendant's objection in the lower court. Defendants did not object to the doctor's unsolicited use of the word "insurance". The objection was directed to the fact that plaintiff's counsel intentionally continued to "develop it."

We do not agree that the questions asked by counsel after Dr. Pechero's unresponsive use of the prohibited word was such as to require a mistrial. Plaintiff was entitled to develop the fact that Dr. Pechero knew, at the time that he prepared his reports, that he would be compensated by "defendants" or by "the people who ran into" plaintiff, and that he had prepared many reports for those persons. In order to show bias and prejudice, according to the Supreme Court, an expert medical witness "may be cross-examined regarding the number of times he has testified in lawsuits, payments for testifying, and related matters." *Russell v. Young,* 452 S.W.2d 434 (Tex.1970). We conclude, as did the Court in *Russell,* that the testimony in this case was not such as to cause the jury to reach the conclusion that liability insurance was involved.

The judgment of the trial court is affirmed.