Charles PYLES, Jr., Appellant,

v.

AMERICAN TRADING & PRODUCTION CORPORATION, Appellee.

AMERICAN TRADING & PRODUCTION CORPORATION, Appellant,

v.

Charles PYLES, Jr., Appellee.

No. 23358.

United States Court of Appeals Fifth Circuit.

Jan. 19, 1967.

Rehearing Denied March 2, 1967.

Sidney Ravkind, Houston, Tex., for appellant.

Edward W. Watson, Galveston, Tex., Eastham, Watson, Dale & Forney, Galveston, Tex., for appellee.

Before WISDOM, COLEMAN, and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge:

The appellant, Charles Pyles, Jr., sued The American Trading and Production Corporation in an action at law for an injury to his back allegedly caused on July 16, 1964, by the negligence of the defendant and the unseaworthiness of its ocean-going tanker, the S. S. Maryland Trader. Demand was also made for maintenance and cure. On June 17, 1965, a jury found that plaintiff caused his own injury entirely but that he had not reached maximum cure.[1] The Court computed maintenance and cure at $2440. Pyles appeals the judgment as to lack of negligence and unseaworthiness. American Trading cross appeals as to the computation of maintenance and cure. The opinion of the District Court on this aspect of the case is reported at 244 F. Supp. 685 (1965). On appeal, the Judgment of the District Court is affirmed.

On cross appeal, the award as to maintenance and cure is reversed and remanded for recomputation consistently with the views herein expressed.

## I

As of April 10, 1964, Pyles had been pronounced Fit for Duty by a physician of American's own choice. On that date he signed with the defendant for a voyage around the world aboard the S. S. Maryland Trader. Ninety five days later, he injured his back. It happened during a tank cleaning operation when he attempted single-handedly to lift a Butterworth machine and its attached hose, of an aggregate weight of approximately seventy pounds, out of one of the deck tanks. Briefly described, a Butterworth machine is a spray type device which may be lowered into a tank so as to wash it out by the use of water from the ship's fire hydrants conducted to the sprayer by connecting hose. The tanks on the S. S. Maryland Trader required thirty

1. Thirteen special issues were submitted to the jury, including:

QUESTION NO. 1. Do you find from a preponderance of the evidence that plaintiff sustained an injury aboard the ship Maryland Trader, on or about July 16, 1964, while pulling a Butterworth machine from a tank?

ANSWER. Yes.

QUESTION NO. 3. Do you find from a preponderance of the evidence at the time of the injury, if any, to plaintiff the ship Maryland Trader or her equipment was unseaworthy as that term has been defined for you?

ANSWER. No.

QUESTION NO. 5. Do you find from a preponderance of the evidence that at the time of plaintiff's injury, if any, the defendant shipowner, or its master, servants and employees, other than plaintiff himself, was negligent in any respect?

ANSWER. No.

QUESTION NO. 8. Do you find from a preponderance of the evidence that at the time of such injury plaintiff Charles Pyles, Jr. was negligent in any respect?

ANSWER. Yes.

If you have answered Question No. 8 "yes" but not otherwise, then answer the following question:

QUESTION NO. 9. In what respect or respects did you find plaintiff Charles Pyles, Jr. to be negligent in your answer to Question No. 8.

ANSWER. 1. Charles Pyles, Jr., an experienced seaman, lifted a Butterworth machine from a tank contrary to accepted procedures.

2. Plaintiff continued lifting the machine after he sustained the back injury.

QUESTION NO. 10. Do you find from a preponderance of the evidence that the negligence of the plaintiff which you found in answer to Question No. 8 was a proximate cause of his injury?

ANSWER. Yes.

If you have answered Question No. 10 "yes", but not otherwise, then answer the following question:

QUESTION NO. 11. To what extent did such negligence on the part of plaintiff Charles Pyles, Jr. cause or contribute to causing his accident and injury?

Let your answer be in the form of percentage                    *100%,*

QUESTION NO. 12. Do you find from a preponderance of the evidence that plaintiff has not reached his maximum medical recovery as a result of his injury on July 16, 1964?

ANSWER. He has not reached his maximum recovery.

feet of hose to reach from the top of the tank to the maximum depth desired for cleaning purposes.

The testimony at the trial was that lifting the Butterworth machine was a job for three men, two at the least. There was also evidence that the machine Pyles lifted was heavier than usual because water was leaking from a hydrant into its hose. Pyles testified at the trial that he was *ordered* by the boatswain to lift the machine from the tank. By deposition, the boatswain denied any such order was given, or that he had ever ordered one man to remove a Butterworth machine from a tank. Pyles testified he had previously lifted Butterworth machines by himself. The night of the injury, on prior tanks, three men had combined to lift the Butterworth machine. A sufficient complement of men was present at the time of Pyles' injury to have continued the operation in that manner. Nevertheless, he attempted to lift the machine without assistance.

The morning after his accident, Pyles received medical treatment from the ship's second mate. He performed no more work before the voyage terminated at Portland, Oregon, on July 28.

Pyles returned to Houston, Texas, and promptly consulted the Public Health Service. He entered the Public Health Service hospital in Galveston July 31, 1964, and remained there as an inpatient until August 4. Upon his release to outpatient status the hospital certified Pyles would be Fit for Duty after fourteen days. American accordingly paid Pyles maintenance for the twelve-day period from August 5, to August 17, 1964.

On August 20, 1964, Pyles entered suit against American for damages occasioned by his injury. He later, May 10, 1965, added the claim for maintenance involved here and a claim for attorney's fees not here involved.

## II

## THE QUESTION OF NEGLIGENCE AND UNSEAWORTHINESS.

There was evidence to support the jury verdict as to seaworthiness and lack of negligence, so appellant now attacks the verdict by attacking the instructions upon which the jury acted.

Pyles' attorney requested that the jury be instructed that Pyles did not assume the risk of an unseaworthy appliance or a negligently given order. Assumption of risk had not been mentioned in either the pleadings or the evidence. The Court declined to mention assumption of risk. This is assigned as error.

▪ Assumption of risk is no defense to unseaworthy or negligent conditions in a personal injury case under either general maritime law or the Jones Act.[2] It has been held reversible error to instruct on assumption of risk without stating it is no defense against unseaworthiness. See Blankenship v. Ellerman's Wilson Line N. Y. Inc., 4 Cir., 1959, 265 F.2d 455, 459.

In an FELA case, we have held that, on facts strongly suggesting assumption of risk, it was not error to instruct the jury that the defense was unavailable to the defendant. See Atlantic Coast Line R. R. v. Burkett, 5 Cir., 1951, 192 F.2d 941. One court has gone so far as to hold, again in an FELA case, that it was reversible error not to charge on the distinction between comparative negligence and assumption of risk. See Koshorek v. Pennsylvania R. R., 3 Cir., 1963, 318 F.2d 364.

The FELA cases are apparently sui generis on the point of assumption of risk. We have a strong judicial pronouncement in Tiller v. Atlantic Coast Line R. R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943) that the Federal Employers' Liability Act was meant to

2. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1938); Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082 (1935); The Arizona v. Anelich, 298 U.S. 110, 56 S. Ct. 707, 80 L.Ed. 1075 (1935); Couts v. Erickson, 5 Cir., 1957, 241 F.2d 499, 502, fn. 6.

obliterate "every vestige" of assumption of risk from the class of cases it covered. By contrast, this Court has intimated there may be traces of risk yet assumed by the seamen's trade. See Couts v. Erickson, 5 Cir., 1957, 241 F.2d 499, 502, fn. 6.

▮ We think the trial court was entirely correct in declining to instruct on assumption of risk. Baker v. Great Atlantic and Pacific Tea Co., decided by this Court in 1954, 212 F.2d 130, was a case in which the plaintiff, an experienced carpenter, was engaged in sawing some large plywood boards into smaller panels, using a circular saw furnished by the employer. Without stopping the saw, plaintiff attempted to remove with his bare hand a small fragment of wood left from a board which he had been sawing. The fragment struck the saw, in some manner throwing plaintiff's hand into it, resulting in serious injuries. The employer had not accepted the provisions of the Florida Workmen's Compensation Law, which left it subject to an action at law and deprived it of the defenses of negligence of a fellow servant, assumption of risk, and contributory negligence. The only remaining defenses were no actionable negligence or that the negligence of the plaintiff was the sole proximate cause of his injury. The defendant pleaded both. The trial court refused to charge on assumption of risk. We said:

"Appellant also complains of the refusal of the trial court to charge the jury that assumption of risk is not a defense here. Assumption of risk was neither pleaded nor argued as a specific defense. A charge on that doctrine therefore would have been inappropriate. The trial court made it quite clear, however, that only two defenses were open to the employer: (1) that the employer was entirely free of negligence which caused, or contributed to causing, plaintiff's injury; and (2) that the injury was caused solely by plaintiff's negligence. This presented the issues appropriately."

Appellant next complains of the instruction given as to the obligation of the seaman to obey orders. The instruction was as follows:

"You are instructed that the circumstances under which a seaman works are different under [sic] which those in shore or land based employment works. In this sense, a seaman's job is unique, confined to a vessel on the high seas he is obligated by law to obey orders given to him by his superior. If he should refuse to obey such order he is subject to punitive action by federal authorities. *But on the other hand, the law does not prohibit or discourage a seaman from calling attention to his superiors as unusual, unreasonable or improper, and* [sic] *order, if given by those superiors. The law does not prohibit or discourage a seaman from taking reasonable action for his own protection.* [Emphasis added.]

Pyles contends that the last two sentences of the instruction, unrequested, were erroneously given.

To support this contention, the appellant's brief cites only Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629. In that case it was held to be reversible error not to charge the jury on the seaman's legal duty to obey. In *Cox*, however, the seaman was undisputedly ordered by a superior officer to engage in the conduct by which he came to be injured.

In our view of the instant case it is inescapably implicit in the verdict that the jury found Pyles to have been given no order.

The Court instructed the jury, "If he [Pyles] was instructed to do it [lift the machine from the tank] by himself and not furnished adequate assistance, then you would find, also in that event, you would say yes, the vessel was unseaworthy". The jury found the vessel seaworthy.

The jury was further instructed " * * it would seem from the testimony that if in fact Mr. Pyles was instructed to go and do the Butterworthing and remove the Butterworthing machine by the

bosum, under all the facts and circumstances of this case, it would have constituted negligence." The jury found no negligence on the part of the defendant and further found that plaintiff's negligence was the sole proximate cause of his injuries.

■ The Court below did charge on the seaman's duty to obey his superior officers. The complaint is against the emphasized last two sentences of the charge as above quoted. We have been cited no authority that these sentences erroneously state the law. Even if error, they were harmless in the face of the clear conclusion that the jury found Pyles not to have been ordered to raise the machine by his unassisted efforts.

## III

### THE MATTER OF MAINTENANCE AND CURE

The jury found that as of the date of its verdict Pyles had not achieved maximum medical recovery. By contract maintenance and cure is fixed at eight dollars per day. In computing the number of days for which plaintiff was entitled to recover, the District Court stated:

"The United States Supreme Court succinctly stated the rationale of maintenance and cure in Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962):

'Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery.'

"Maintenance extends during a period of convalescence until the maximum cure is obtained, Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); and the fact that plaintiff returned to his regular employment does not bar his recovery. Yates v. Dann, 223 F.2d 64 (3rd Cir.

1955); Koslusky v. United States, 208 F.2d 957 (2d Cir. 1953). Plaintiff is entitled to maintenance and cure undiminished by the amount of his earnings on the jobs between certification as Fit for Duty by the U.S.P.H.S. and the date of the jury verdict. Vaughan v. Atkinson, supra. Plaintiff is not entitled to maintenance for the periods he spent in marine hospitals, Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), or for the periods in which defendant already has paid maintenance."

These cases held as the District Court indicated and if we looked only to their bare language we would here encounter no difficulty for the jury found that cross-appellee had not achieved maximum medical recovery as of the date of the verdict. We are of the opinion, however, that the facts of this case are radically different from those upon which *Vaughan* and *Yates* were decided.

The chronology of events shown by Plaintiff's testimony was as follows:

July 16, 1964—date of injury on Maryland Trader.

July 28, 1964—end of voyage of Maryland Trader.

July 31–August 4, 1964—hospitalized in U.S.P.H.S. facility at Galveston. Released to be fit for duty in 14 days.

August 17, 1964—date to which maintenance was paid by defendant under previous certification.

August 25, 1964—date upon which plaintiff was determined and certified as Fit for Duty by U.S.P.H.S., Galveston.

September 16, 1964—plaintiff examined by Parkview Clinic and found Fit for Duty for service on vessel Aimee Lykes.

September 16–November 30, 1964—plaintiff employed as A.B. on Aimee Lykes on voyage to Far East. On October 29 again injured back while working aboard Aimee Lykes. Left this vessel at Panama City, Florida, on November 26 (Thanksgiving Day) and returned to Houston for treatment at U.S.P.H.S. outpatient clinic, Houston.

November 30–December 18, 1964—under outpatient treatment and receiving maintenance payments from Aimee Lykes. Fit for Duty December 18, 1964.

January ...., 1965—employed by Carl J. Smith Company for several days on in-port job.

February 9–February 22, 1965—employed as deck maintenance man on Key Trader for coastwise voyage.

February 26–April 1, 1965—employed as boatswain on Ticonderoga.

May 6–June 3, 1965—employed as day man on D. G. Kerr on Great Lakes. Left this employment to return to Houston for trial of case.

June 17, 1965—date of jury verdict.

Plaintiff was not under any medical care, public or private, from the time he was released as Fit for Duty by U.S.P.H.S., Galveston, on August 25, 1964, until he reported to the U.S.P.H.S. outpatient facility, Houston, on November 30, 1964, for treatment of the new injury, or reinjury, which he had received on Aimee Lykes. After discharge by that facility on December 18, 1964, again Fit for Duty, plaintiff was not under any medical care, public or private, until he returned to Houston on June 3, 1965, or shortly thereafter, at which time he was examined by a Dr. Minyard (for plaintiff) and a Dr. Ainsworth (for defendant) and again seen by the U.S.P.H.S. facility at Houston which put him on a Not Fit for Duty status.

On Aimee Lykes plaintiff performed all of his duties as an A.B. until the new injury incident on October 29, 1964. On Key Trader plaintiff carried out all of his duties as deck maintenance man and earned $212.00 base pay and $149.00 overtime for the two weeks. On Ticonderoga plaintiff carried out all of his duties as boatswain and earned base pay of $629.95 and overtime of $379.79 for the thirty-five days. On the D. G. Kerr plaintiff carried out all of his duties as seaman on the deck watch for which he received pay at $235.00 per week, overtime not being involved on that type of Great Lakes vessel.

In entering a judgment awarding maintenance for 305 days until date of the jury verdict on June 17, 1965, the Court below allowed this maintenance for each and every day from August 25, 1964, subject only to the condition that plaintiff return to Lykes the maintenance which he had collected for the period from November 30 to December 18, 1964.

■ There is no argument about the verdict. The fact that plaintiff had been pronounced Fit for Duty by the Public Health Service and by a physician for the Aimee Lykes did not foreclose the case. The question as to maximum recovery was for the jury and the jury decided for the plaintiff, Yates v. Dann, supra.

The problem on appeal is that the Court awarded maintenance and cure for days on which plaintiff was not on an outpatient status; for days during which plaintiff had been certified Fit for Duty as an able bodied seaman and satisfactorily performed those duties; and for nineteen days, November 30 to December 18, for which plaintiff had already been paid by the Aimee Lykes.

The question is: Should Pyles be entitled to recover for days when he was certified Fit for Duty and actually performed compensated duty, or (b) for days for which he had received support and maintenance from another, or (c) for days on which he was not on an outpatient status with some physician, public or private?

Pyles filed his suit for damages in August, 1964. The amendment claiming maintenance and cure did not come until May, 1965, shortly before the case went to trial. In his amended complaint he alleged that demand for maintenance and cure had been often made and refused. In its answer, the defendant denied this. We find no testimony in the record as to the dates of the demands or the nature of the refusals. The record is silent as to what prompted Pyles to go back to work, after being certified Fit for Duty, other than his testimony,

without further elaboration, that he had been "trying to make a living".

What we have here, then, is a seaman who admittedly was disabled for a short time, was certified Fit for Duty, went back to work earning much more than eight dollars a day, was injured again in his back, received maintenance and cure from another ship, was again certified Fit for Duty, went back to work and continued to work, apparently to the satisfaction of his employers, until shortly before the trial. He then left his job on the Lakes, returned to Houston, where he was again certified Not Fit and again became an outpatient at the United States Public Health Service hospital. He did testify that although he worked after his injury, he suffered pains in his back and legs in doing so.

In Vaughan v. Atkinson, supra, the claimant was hospitalized for eighty days and was on an outpatient status for over two years, being treated for suspected tuberculosis. The hospital records indicated a strong probability of active tuberculosis. He sent the shipowner an abstract of his medical record and requested payment for maintenance and cure. His request was willfully and persistently ignored and evaded. He was forced to drive a taxicab as a means of support. The suit was brought in admiralty and the Supreme Court said, "equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief".

The Court, under the facts of the case, held:

"In Johnson v. United States, 333 U.S. 46 [68 S.Ct. 391, 92 L.Ed. 468], we held that a seaman who while an outpatient was living on his parents' ranch without cost to himself was not entitled to maintenance payments. There maintenance and cure was wholly provided by others. Here the libellant was on his own for nearly two years and required to work in order to survive. It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings. This would be a dreadful weapon in the hands of unconscionable employers and a plain inducement, as Chief Judge Sobeloff said below (291 F.2d [813], at 820) to use the withholding of maintenance and cure as a means of forcing sick seamen to go to work when they should be resting, and to make the seamen themselves pay in whole or in part the amounts owing as maintenance and cure."

The Court went on to stamp its express approval upon Yates v. Dann, supra. That was a Jones Act case, also seeking recovery for maintenance and cure. The Court of Appeals for the Third Circuit held that a grievously injured seaman who was denied maintenance and cure and thus forced by financial necessity to return to his regular employment was not legally barred from recovery, citing Koslusky v. United States, supra.

In *Vaughan,* a man apparently suffering with tuberculosis was cruelly ignored and left on his own for two years, receiving relief only after he had sued for it. In *Yates,* the seaman had been *forced* to go back to work because the ship on which he had been injured refused to pay maintenance and cure. In the case now before us, Mr. Pyles was promptly paid for the time he was an outpatient and before he was certified Fit for Duty. When he was hurt on the Aimee Lykes, he claimed and received maintenance and cure from that vessel, not from American. The allegation of his amended complaint that he had often demanded maintenance and cure of American was denied and we find no proof in the record on that question.

In this case the facts are so unlike those in *Vaughan* and *Yates* that the bare language of the opinion in those cases is not dispositive of the issues now before us.

■ The rationale of Johnson v. United States, supra, is that seamen who receive maintenance and cure from some other source are not entitled to claim it of the ship on which the injury was sustained. We therefore hold that the plaintiff was not entitled to collect a second time the maintenance and cure he had already received in the voluntary payments of the Aimee Lykes.

The rationale of both *Vaughan* and *Yates* is that the shipowner will neither be encouraged nor permitted to withhold maintenance and cure clearly due a seaman, forcing him either to sue for his benefits, as in *Vaughan,* or to go back to work to maintain himself, as in *Yates*.

There is no showing in this record that Mr. Pyles went back to work because he had demanded and been denied maintenance and cure. Most significantly, there is nothing in the record to show that if Pyles had sought cure instead of going back to work he would not have experienced maximum medical recovery prior to the date of the jury verdict. The cause must be reversed and remanded, with directions to the District Court to hear and determine:

1. Whether, in fact, subsequent to the final payment in August, 1964, and prior to filing suit for maintenance and cure, plaintiff notified American that he claimed such;

2. If so, whether American willfully failed to heed or decline to pay the claim; and

3. Whether Pyles' failure to obtain medical treatment on so much as an outpatient basis caused no delay in maximum medical recovery.

■ If these questions should be answered in the affirmative, then plaintiff will be entitled to recover for all days awarded in the court below, except those already paid by the Aimee Lykes.

■ If the finding is in the negative, then plaintiff cannot recover maintenance and cure for those days in which he was working of his own choice and receiving compensation of as much as eight dollars a day or more, nor can he recover for days in which he did not work and during which he, of his own volition, was not under medical treatment even as an outpatient.

■ What we hold is that a seaman cannot remain silent and wait until such time as pleases his convenience to assert a claim and then recover for days worked of his own free choice for pay equal to or in excess of the contractual maintenance and cure allowance. Nor is he entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention.

■ This rule does no violence to the teachings of *Vaughan* and *Yates*. In fact, we do not here have a case such as those. We are dealing with the other side of the coin. A seaman by voluntarily working at his accustomed trade rather than using maintenance and cure to speed his recovery cannot by those tactics enhance the liability of the shipowner any more than the shipowner can be permitted to minimize his liability by refusing to pay and forcing the seaman back to work.

■ Furthermore, under the facts of this case, we consider this holding to be completely consistent with the law of maintenance and cure, which is that this benefit is required of the shipowner in order to alleviate the physical and financial hardship which otherwise would beset a sick or injured seaman without means of support or hope of obtaining medical care.

As to exoneration of the defendant-appellee from liability for alleged negligence and unseaworthiness, the Judgment of the District Court is affirmed.

As to the item of maintenance and cure, the Judgment will be reversed and remanded for a recomputation consistently with the views herein expressed.