Richard T. WOOD, Plaintiff-Appellee Cross-Appellant,

v.

DIAMOND M DRILLING COMPANY and Diamond M International Company, Defendants-Appellants Cross-Appellees.

No. 81–2495
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 22, 1982.

Rehearing Denied Dec. 16, 1982.

---

Ross, Griggs & Harrison, J. Douglas Sutter, Houston, Tex., for defendants-appellants cross-appellees.

Mandell & Wright, Sidney Ravkind, Houston, Tex., for plaintiff-appellee cross-appellant.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This matter arises from a claim for personal injuries under the Jones Act, 46 U.S.C. § 688. Because we find evidence sufficient to support the jury's conclusions as well as the Court's findings regarding maintenance and cure, we affirm.

## I. *Diamond and the Roughneck*

In exploring the many facets of this case, we begin with the DIAMOND M NEW ERA, a semi-submersible drilling rig owned by the defendant, Diamond M Drilling Company (Diamond).[1] Mounted in the sapphire seas off the coast of New Jersey, Diamond's ERA is but one of many such rigs found along the Atlantic's jewelled coast. In this simple yet impressive setting, the plaintiff, Richard Wood (Wood), was employed by Diamond as a roughneck or floor hand. On July 5, 1978, while doing general maintenance work, Wood was called to the moon pool area of the rig to make some repairs on a disengaged fill-up line. To assist in these repairs, Wood positioned himself on some scaffolding and held on to a tensioner cable for balance. Tensioner cables secure the rig to the ocean floor. They move in and out of various pulleys as the rig rocks and sways in the ocean swells. At that moment, the cable that Wood was grasping moved because of an ocean swell and Wood's left hand was pulled into the pulley mechanism causing him serious injury.

Wood filed suit under the Jones Act, 46 U.S.C.A. § 688, and the Admiralty and General Maritime law of the United States alleging negligence and unseaworthiness seeking damages and maintenance.

The issues of negligence, unseaworthiness and damages were submitted to the jury on eight special interrogatories.[2] In answering the special interrogatories, the jury found both parties negligent, apportioning 27% fault to Wood, and found the DIAMOND M NEW ERA seaworthy. It further awarded Wood $267,000 damages.[3]

The issue of maintenance and cure was submitted to the District Court by agreement. Following a conference on maintenance and cure, the court awarded Wood compensation maintenance of $30 per day from October 3, 1979 to July 1, 1981, the date on which Wood would reach his maximum medical recovery.

Following trial, Diamond filed a motion for j.n.o.v. The Court denied the motion and entered judgment. Diamond appeals.

## II. *Diamond is for Error*

### A. *Loss of Future Earnings*

Diamond argues that the jury's award of $200,000 for loss of future earnings was excessive and, for that reason, the Judge erred in entering judgment for this amount. Diamond contends that because Wood is now employed at a salary in excess of the amount he received while employed at Diamond and had not intended to remain a rig

---

1. Diamond M International Company was subsequently added as a party defendant.

2. F.R.Civ.P. 49(a). This court has long extolled the use of special interrogatories under Rule 49(a). *Trailways Bus System, Inc. v. J. C. Motor Lines,* 689 F.2d 599 (5th Cir. 1982); *Jones v. Miles,* 656 F.2d 103, 106 n. 3 (5th Cir. 1981); *Guidry v. Kem Manufacturing Co.,* 598 F.2d 402, 403, 405–06 (5th Cir. 1979); *Nardone v. Reynolds,* 538 F.2d 1131, 1137 n. 16 (5th Cir. 1976); *reh. denied,* 546 F.2d 906 (1977); *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 934–35 (5th Cir.) *reh. denied,* 530 F.2d 34 (1976); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 693–94 (5th Cir. 1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Simmons v. King,* 478 F.2d 857, 862 n. 12 (5th Cir. 1973), *Burns v. Anchor-Wate Co.,* 469 F.2d 730, 734 n. 8 (5th Cir. 1972). *In re Double D Dredging Co.,* 467 F.2d 468, 469 (5th Cir. 1972); *Bailey v. Kawasaki-Kisen, K.K.,* 455 F.2d 392, 394 (5th Cir. 1972). *See generally* Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338 (1967).

3. The jury apportioned the award as follows:
   a. for wages lost up to the date of trial as a result of the injury;
      $16,000.00
   b. for the loss of future earnings caused by the injury:
      $200,000.00
   c. for any pain, suffering and mental anguish suffered in the past as a result of the injury:
      $18,500.00
   d. for any pain, suffering, and mental anguish which Plaintiff will probably suffer in the future as a result of the injury:
      $12,500.00
   e. for any loss of life's enjoyment suffered by the Plaintiff in the past as a result of the injury:
      $10,000.00
   f. for any loss of life's enjoyment which Plaintiff will probably suffer in the future as a result of the injury.
      $10,000.00

worker for the rest of his life, a jury award of $200,000 was unsupported by the evidence and, in any case, excessive. Diamond's argument is flawed.

■ This Court affords great deference to jury findings. The Seventh Amendment to the Constitution provides that no fact tried by a jury shall be reexamined by any court of the United States except according to the rules of common law. This constitutional requirement is reinforced by statute in cases brought under the Jones Act. *Boeing v. Shipman,* 411 F.2d 365, 371 (5th Cir. 1969). For that reason, an appellate court may not reweigh the evidence or set aside the jury's verdict merely because the appellate judges could have drawn different inferences or conclusions from the evidence, or feel that other results might be more reasonable. *Gallick v. Baltimore & Ohio Railroad Co.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Sentilles v. Inter-Carribean Shipping Corp.,* 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959). The most an appellate court can do is to determine whether there was any competent and substantial evidence in the record which fairly tends to support the verdict. *Mortensen v. United States,* 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944). Thus, an appellate court will not overturn a jury's verdict, even though contradictory evidence was presented, if there is an evidentiary basis for the verdict. *Basham v. Pennsylvania Railroad Co.,* 372 U.S. 699, 83 S.Ct. 965, 10 L.Ed.2d 80 (1963); *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

■ Measured by these standards, we hold that there is sufficient evidence in the record to support the jury's award of $200,000 for loss of future earnings. Wood testified that he planned to remain in the oil drilling field and that being an assistant driller was the kind of work he wanted to do. Wood's wife testified that her husband wanted a kind of job where he could work with people and where he could be physically active. A court of appeals can review the findings of a trial court, but it cannot try the action *de novo.* Thus, this Court cannot weigh the evidence or reassess testimony, since the trier of fact is the ultimate judge of the credibility of the witnesses. *Friedman v. Commissioner,* 235 F.2d 86 (6th Cir. 1956). Thus, though the proof may not be D-flawless, the evidence in the record is sufficient to sustain a jury award of $200,000 for loss of future earnings.

■ Moreover, we do not find the amount of the award excessive. We have repeatedly held that a jury's award is not to be disturbed unless it is so large as to "shock the judicial conscience", indicate "bias, passion, prejudice, corruption, or other improper motive" on the part of the jury, *Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 364 (5th Cir. 1980), or is "contrary to all reason." *Menard v. Penrod Drilling Co.,* 538 F.2d 1084 (5th Cir. 1976). *See e.g., Morgan v. Commercial Union Assurance Cos.,* 606 F.2d 554, 556 (5th Cir. 1979); *King v. Ford Motor Co.,* 597 F.2d 436, 445 (5th Cir. 1979); *Taylor v. Washington Terminal Co.,* 409 F.2d 145 (D.C.Cir.), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). Thus, before a court of appeals may set aside an award of damages as being excessive, it must make a detailed appraisal of the evidence bearing on damages and find that, in light of such detailed evidence, the amount of the jury award is so high that it would be a denial of justice to permit it to stand. *Grunenthal v. Long Island Railroad Co.,* 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); and *see Gorsalitz v. Olin Matheson Chemical Corp.,* 429 F.2d 1033 (5th Cir. 1970).

■ Wood presented detailed evidence as to his projected lifetime earnings. In its brief, Diamond does not challenge these projections outright, but rather focuses on Wood's current employment with Sedco and the fact that Wood is currently earning a salary in excess of that he earned while employed by Diamond. In *Griffith v. Wheeling-Pittsburgh Steel Corp.,* 452 F.Supp. 841, 846 (W.D.Pa.1978), the Court based its award for loss of future earnings on loss of employment opportunities as opposed to actual reduction in earnings. The Court said, "It is not the status of the immediate present which determines capac-

ity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. It must be determined whether or not the economic horizon of the plaintiff has been shortened because of the injury sustained as a result of defendants' negligence." *Id.* at 846. Though not bound by the decision, we nevertheless agree with the Court's analysis. We are not shocked, or dazzled, by what Diamond would have us believe is a forty-carat award. We therefore hold that the District Court was correct in entering judgment on the jury's finding.

### B. *Lost Wages*

■ Diamond next argues that the jury's finding of $16,000 in lost wages was incorrect. Diamond argues that since Wood's base salary was paid by Diamond until the time of his voluntary employment with Sedco, the evidence was insufficient to support the jury's award. We do not agree.

At first glance, Diamond's argument has a ring of truth. Prior to his employment with Sedco, Wood did receive $250 per week in payments from Diamond. Though this amount roughly equals Wood's weekly salary from Diamond,[4] Diamond's suggestion that Wood had already been paid his lost wages is flawed.

This cutty analysis of Diamond's claim reflects this Court's hesitance to overturn jury findings. As suggested above, this Court will disturb jury findings only when they "shock the judicial conscience." The $16,000 award for lost wages is clearly reflected in the evidence. Wood presented detailed evidence concerning both his salary at the time of the accident and his potential earning increases to the date of trial. Yet even if Wood had remained at his salary level as of the date of the accident, the $16,000 award for lost wages would not be so outrageous as to justify this Court's overturning it. In fact, counsel for Dia-

mond, who clearly has no need to magnify the award, in his closing argument to the jury, suggested that lost wages, if any, should be "somewhere in the neighborhood of $12,000". On this basis, we see no reason to disturb the jury's findings.

### C. *Loss of Life's Enjoyment*

■ Diamond next urges that the trial court erred in entering judgment for plaintiff's loss of life's enjoyment in addition to his pain, suffering, and mental anguish. *See* note 3, (c) and (d). The issue of loss of life's enjoyment suffered by Wood was submitted to the jury on special interrogatories. *See* note 3, (e) and (f). This Court has traditionally held that a trial judge has considerable discretion in framing the issues involved. *Dreiling v. General Electric Co.,* 511 F.2d 768, 774 (5th Cir. 1975); *Abernathy v. Southern Pacific Co.,* 426 F.2d 512, 514 (5th Cir. 1970); *Grey v. First National Bank of Dallas,* 393 F.2d 371, 385 (5th Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). Although the judge must frame the special issues submitted to the jury, he is entitled to the assistance of counsel for both parties. On the record before this Court, we find no objection made by Diamond's counsel to the separate and simultaneous submission of the issues of loss of life's enjoyment and damages for pain, suffering, and mental anguish. By failing to object, defendant denied the Court below an opportunity more precisely to frame the issues involved. For that reason, we have consistently held that a party who fails to object to the form of special interrogatories and accompanying general instructions cannot complain for the first time on appeal. *J. C. Motor Lines,* at 602; *Charles Stores, Inc. v. Aetna Insurance Co.,* 490 F.2d 64, 67–68 (5th Cir. 1974); *Nimnicht v. Dick Evans, Inc.,* 477 F.2d 133, 134 (5th Cir. 1973). Because Diamond failed to object, we need not reach the merits of its claimed duplication of award.[5]

---

**4.** Wood urges, and Diamond, in its reply brief, admits that these payments were characterized by the District Court as maintenance. Reply Brief at 5. *See* p. 1171, *infra,* where this Court affirms the District Court's finding of $30 per week maintenance.

**5.** Had a timely, adequate objection to the Judge's charge and the interrogatories been

### D. *Maintenance*

██ Diamond's fourth basis for appeal concerns the District Court's award of maintenance of $30 per day up to the date on which Wood reached the point of maximum medical benefit. Diamond contends first that awarding maintenance from the date plaintiff voluntarily obtained other employment with Sedco to the date he reached the point of maximum medical benefit constitutes double recovery. In so arguing, Diamond appears to confuse the policies underlying the duty to provide maintenance and cure with those forming the basis for other compensatory rights. In *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938), the Supreme Court catalogued the policy rationales underlying the rule by referring to Mr. Justice Story's opinion in *Harden v. Gordon,* 11 Fed.Cas. No. 6047 (C.C.).

██ Admiralty courts have been liberal in interpreting this duty. *Id.* 303 U.S. at 529, 58 S.Ct. at 653. In *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the Supreme Court held a shipowner's liability for maintenance and cure to be among the "most pervasive" of all and that it was not to be defeated by restrictive distinctions nor was it to be "narrowly confined." *Id.* at 735, 63 S.Ct. at 936. Moreover, when there are ambiguities or doubts concerning a shipowner's liability, they are to be resolved in favor of the seaman. *Warren v. United States,* 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951).

For these reasons, maintenance and cure differs from contractual rights. The Court, in *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932), held that maintenance and cure "is imposed by the law itself as one annex to the employment.... Contractual it is a sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident." Thus, recovery of maintenance and cure is not subject to the

same mitigation limitations that govern recovery based on ordinary contractual rights.

In *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) the Supreme Court allowed recovery of maintenance and cure without deduction of the amount of plaintiff's earnings subsequent to his injury. The Fifth Circuit has spoken more directly to this issue in *Brown v. Aggie & Millie, Inc.,* 485 F.2d 1293, 1296 (5th Cir. 1973). In *Brown,* this Court held that the cutoff point for maintenance and cure is not the time at which the seaman recovers sufficiently to return to his old job but rather is the time of maximum possible cure. *See Farrell v. United States,* 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); *Lirette v. K & B Boat Rentals, Inc.,* 579 F.2d 968 (5th Cir. 1978); *Price v. Mosler,* 483 F.2d 275 (5th Cir. 1973); *Myles v. Quinn Menhaden Fisheries, Inc.,* 302 F.2d 146 (5th Cir. 1962); *Reardon v. California Tanker Co.,* 260 F.2d 369 (2d Cir. 1958), *cert. denied,* 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628 (1959).

Diamond relies on *Vaughan* for the proposition that *only* when a seaman's return to work was brought about by economic necessity resulting from the shipowner's failure to pay maintenance and cure is he entitled to maintenance and cure during the period of employment. Thus, it argues that because Wood's employment is not the result of such economic necessity, he is no longer entitled to maintenance and cure. We see no reason to read *Vaughan* so narrowly.

Though there is some indication in the available record that Wood recuperated at his parent's house for the first few months following his injury, the record is otherwise devoid of Wood's economic reasons for obtaining employment with Sedco. Though we agree with Diamond, that, under *Johnson v. United States,* 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948), Wood is not entitled to a windfall, we do not believe that, under *Vaughan,* he should be subject to a

---

made, the result here might have been different. *Crador v. Louisiana Department of Highways,* 625 F.2d 1227 (5th Cir. 1980); *Dugas v.*

*Kansas City Southern Railway Lines,* 473 F.2d 821, *reh. denied* 475 F.2d 1404 (5th Cir. 1973).

forfeiture of his right under the law for having returned to work. Thus, in accordance with our decisions in *Brown* and *Lirette*, we hold that the District Court did not err in awarding maintenance to Wood to the date he reached the point of maximum medical benefit.[6]

In the alternative, Diamond argues that any award of past lost wages, if upheld, duplicates the award of maintenance and cure and should be offset against it. In *Cates v. United States,* 451 F.2d 411, 417–18 n. 20 (5th Cir. 1971), we held that unless there is an "affirmative showing on the record" that the elements compensated for (here lost wages) have actually been included in the maintenance award, a seaman is not precluded from recovering maintenance. Moreover, the burden is on the one claiming duplication to show that the damages assessed against it have "in fact and in actuality" been previously covered. *Id. See Billiot v. Sewart Seacraft,* 382 F.2d 662 (5th Cir. 1967); *Vickers v. Tumey,* 290 F.2d 426 (5th Cir. 1961); *Smith v. Lykes Brothers-Ripley,* 105 F.2d 604 (5th Cir.), *cert. denied,* 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); *Muise v. Abbott,* 60 F.Supp. 561 (D.Mass.1945), *aff'd,* 160 F.2d 590 (1st Cir. 1947). No such showing was made. Furthermore, we find no interrogatory, objection to the charge, or argument to the jury that suggests duplication. Absent this, we hold that the award for maintenance and cure is not duplicated by the award for lost wages.

[11] Diamond polishes off its appeal by arguing that the District Court's award of $30 per day maintenance was excessive. It cites numerous cases in support of its assertion that no reported decision awards maintenance greater than $20 per day. Of course, what is a reasonable cost of care during essential convalescence is, quite obviously, a fact question. Just as obviously, findings of fact by the District Court are binding unless clearly erroneous. F.R. Civ.P. 52(a); *Webb v. Dresser Industries,* 536 F.2d 603, 606 (5th Cir. 1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). There is testimony in the record to support the $30 per day award. *See Morel v. Sabine Towing & Transportation Co.,* 669 F.2d 345, 347 (5th Cir. 1982) (plaintiff's testimony on maintenance and cure sufficient to sustain award). Measured by this standard, we hold that the District Court's finding of $30 per day maintenance was not clearly erroneous. Though there may have been evidence to the contrary, viewing the record as a whole, we see no reason to disturb the District Court's award. *See Vaughan,* 369 U.S. at 532, 82 S.Ct. at 1000 (ambiguities and doubts are to be resolved in favor of the seaman).

6. *Pyles v. American Trading & Production Corp.,* 372 F.2d 611 (5th Cir. 1967) is not inapposite. In *Pyles,* an injured seaman, who was receiving payments from American as the result of an employment-related back injury, went to work for another ship, was reinjured and received maintenance from the second ship. The Court held that he was not entitled to collect a second time maintenance he had already received in voluntary payments by another shipowner.

The Court acknowledged, *Id.* at 616, that the rule of *Vaughan* and *Yates v. Dann,* 223 F.2d 64 (3d Cir. 1955), applied and that the fact that the plaintiff had returned to work did not bar his recovery of maintenance. 223 F.2d 64. It was of the opinion that the facts in *Pyles* were "radically different" from those in *Vaughan* and *Yates* and, on that basis, limited recovery. In *Pyles,* the plaintiff sought to receive maintenance from *two* separate sources on the basis of a reinjury incurred while performing that same type of task that resulted in the original injury. Thus, he sought to enhance his recovery from American because of his activities and reinjury on another ship. Pyles had been certified Fit for Duty prior to his reinjury.

Here, Wood had not returned to his "accustomed trade", 372 F.2d at 619, but had instead taken a clerical job as an administrative assistant in Sedco's financial department. Unlike Pyles, Wood had never been certified Fit for Duty, had not been reinjured, and was not receiving maintenance from another ship. In fact, Wood had never recovered from his injuries. *After* he began working for Sedco in September of 1979, Wood underwent three operations on his hand and extensive therapy. With these uncontradicted facts *Pyles* is not controlling.

For the foregoing reasons, the District Court's decision was of gem quality and judgment below was correct.[7]

AFFIRMED.

---

7. This Court having affirmed the judgment below, there is no need to rule on Wood's cross-appeal concerning trial by jury in admiralty actions. Wood's motion for sanctions under F.R.Civ.P. 38 is denied.