**CARGO SHIPS & TANKERS, INC.,**
Appellant,

v.

**Thomas McDONALD, Appellee.**

No. 6993.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 18, 1968.

---

Royston, Rayzor & Cook, Houston, for appellant.

Billy J. Sanders, Beaumont, for appellee.

## ON MOTION FOR REHEARING

PARKER, Justice.

The opinion in this cause of November 27, 1968, is withdrawn. This opinion will be substituted therefor and judgment rendered as hereinafter set forth.

Thomas E. McDonald brought this suit in the 58th District Court of Jefferson County, Texas, pursuant to the provisions of the Jones Act (46 U.S.C.A. Section 688), alleging injuries sustained while sailing as a member of the crew of the SS CYCLONE owned and operated by the appellant, Cargo Ships & Tankers, Inc. It was the plaintiff's claim that he sustained his injuries as the result of an accident in the shaft alley of the vessel on December 31, 1964 when a loose or unsecured floor plate of the catwalk caused him to fall to the bilges below. The case was tried to a conclusion before a jury which returned a verdict awarding damages to this plaintiff-seaman in the amount of $50,000.00, plus maintenance to the date of trial in the amount of $4,264.00 or a total judgment of $54,264.00. Following the entry of the judgment, appellant, Cargo Ships

& Tankers, Inc., duly perfected this appeal. In this opinion, Thomas McDonald will be called appellee or plaintiff, and Cargo Ships & Tankers will be called defendant or appellant.

Appellant's first three points of error are:

### 1.

The Trial Court erred in overruling Appellant's Motion for Directed Verdict following the close of the Appellee's evidence inasmuch as Appellee failed to sustain his burden of proof and brought forth no evidence of probative force to prove that he sustained an accident on the date and in the manner alleged with resulting injury and damages.

### 2.

The Trial Court erred in overruling Appellant's Motion for Directed Verdict following the close of all of the evidence, inasmuch as Appellee failed to sustain his burden of proof and to prove by adducing evidence of probative force that he sustained an accident on the date and in the manner alleged with a resulting injury and damages.

### 3.

The Trial Court erred in overruling Appellant's Motion For Judgment Non Obstante Veredicto following the verdict of the jury in view of the complete absence of evidence or legally sufficient evidence to support a finding that he sustained an accident in the shaft alley of the SS CYCLONE on December 31, 1964, or that the alleged resulting injuries and damages stem from an accident on board said vessel; that the Appellee wholly failed to sustain his burden of proof and to prove his case by means of evidence of probative force in accordance with the applicable law.

Appellee contends that appellant's Points of Error Nos. 1, 2, and 3 are not

subject to review by this court because appellant's motion for directed verdict following the close of appellee's evidence, appellant's motion for directed verdict following the close of all of the evidence and appellant's motion for judgment non obstante veredicto were not presented to or acted upon by the trial court. Appellee, in support of his contentions as to waiver of these three motions by appellant, cites Ellis Drilling Corporation v. McGuire, Tex.Civ.App., 321 S.W.2d 911, ref., n. r. e.; Musick v. Muecke, Tex.Civ.App., 243 S.W.2d 594 (writ dismissed); Choate v. American Motorist Ins. Co., Tex.Civ.App., 323 S.W.2d 188 (no writ hist.).

Appellant's motion for instructed verdict at the close of the plaintiff's evidence bears the file mark of October 16, 1967. However, in open court, the following took place.

BY MR. BUE:
I want to be sure, Your Honor, the plaintiff has rested?

BY MR. WALDMAN:
Yes, the plaintiff rests.

BY MR. BUE:
Then, Your Honor, we'd like to make a motion.

BY THE COURT:
Well, consider it filed as of now. Let the record show that as of this time, Mr. Bue's motions are considered filed.

(The Court Reporter recorded the time as 2:00 P.M.)

Its motion for instructed verdict at the close of all the evidence was filed October 16, 1967. Its motion for judgment non obstante veredicto was filed October 16, 1967. Appellant also filed a motion to defer ruling on prejudgment motions pending transcribing of relevant portions of the record at the trial on October 17, 1967. In this latter motion, it is recited that the motions for directed verdict and the motion for judgment non obstante veredicto had

been filed. On October 23, 1967, plaintiff below, appellee here, filed its replication to defendant's motion for instructed verdict, its replication to defendant's motion for instructed verdict made at close of evidence, a reply to defendant's motion for judgment non obstante veredicto, and a reply to defendant's motion to defer ruling on prejudgment motions pending transcribing of relevant portions of record at the trial. In Plaintiff's reply to defendant's motion for new trial, he stated "that this Honorable Court did not err in overruling the defendant's Motion for Directed Verdict following the close of plaintiff's evidence," "that this Honorable Court did not err in overruling Defendant's Motion for Directed Verdict after the close of all the evidence," and also "that this Honorable Court did not err in overruling defendant's Motion for Judgment Non Obstante Verdicto [sic] following the verdict of the jury." The appellant has complied with Rules .268, 300, and 301, as it affirmatively appears that the various motions of the defendant below were filed with notice given to adverse counsel and each were presented to and overruled by the trial court according to the admissions of plaintiff below, appellee here. The judgment was announced, rendered, and entered on October 31, 1967. Appellant's Points of Error Nos. 1 through 3 will be considered.

Point of Error No. 4 complains that the verdict of the jury is not supported by any evidence as itemized in Paragraph IV of appellant's motion for new trial. As part of Point of Error No. 4, there is an alternative contention that there is insufficient evidence as so itemized. Appellant's Point of Error No. 4 is:

4.

The verdict of the jury is objected to as not supported by any evidence and indeed is contrary to the overwhelming weight and preponderance of the legal and credible evidence presented at the

trial so as to be clearly wrong and unjust, all as itemized in Paragraph IV of Appellant's Motion For New Trial.

This embraces eleven different possible errors. We are considering the errors briefed by appellant only.

■ Considering only the evidence most favorable to the jury findings, the no-evidence points are overruled. Considering the entire record, including evidence not detailed herein, the insufficient-evidence points are overruled.

The plaintiff's original petition alleged that:

On or about December 30, 1964, while the SS CYCLONE was on a foreign voyage, plaintiff, who was employed by the defendant as a seaman and member of the crew of such vessel, was walking in the shaft alley of the vessel going to take soundings when he stepped on a loose or unsecured floor plate, causing him to fall to the bilges below, and suffer serious personal injuries.

The key special issues relevant to the accident submitted to the jury are as follows:

*Special Issue No. 1*

Do you find from a preponderance of the evidence that plaintiff, Thomas E. McDonald, sustained an injury on December 31, 1964, while working aboard the SS CYCLONE?

*Special Issue No. 2*

Do you find from a preponderance of the evidence that plaintiff, Thomas E. McDonald, sustained such personal injury, if you have so found, when he stepped on an unsecured floor plate, if any, in the shaft alley of such vessel?

*Special Issue No. 9*

Do you find from a preponderance of the evidence that the plaintiff, Thomas E. McDonald, fell in the shaft alley on the morning of December 31, 1964?

To each of the above special issues, the jury answered "We do." Appellant did not object to these issues as submitted to the jury.

Appellee testified that his accident happened while he was walking down the shaft alley of the vessel for the purpose of taking some soundings when a steel floor plate gave way, when, in his own language, the following happened:

Q. Tell the jury in your own words what happened to you?

A. Well, I was going down there to take this sounding and the first thing I knew I was sitting on a bench. * * *

Q. All right, what was the first notice that you had that something was wrong?

A. I was getting dizzy and started to pass out.

* * * * * *

Q. All right, tell us, as best you can recall, what setup was there, what were those plates like—tell us all about them?

A. Well, they are about four or five feet long and about a foot wide. They have little diamond ridges on them that are supposed to keep you from slipping when you walk on them. And, I had those marks on my legs when I started to remembering a little bit, they were all over my one leg. It left those spots, and I had a bump on my head.

Q. Did you have any bruise or anything on your head?

A. I had a knot on my head here, right on the right side.

Q. On the right side?

A. Yes, sir.

The plates were supposed to be bolted or screwed down. Prior to the accident, plaintiff had "requested that this floor plate be

repaired by the chief engineer and he refused to do it." This plate had holes in it so it could be bolted securely. The plaintiff said his clothing was all torn, dirty, and he had bruises on his knee and repeated that there was an imprint of this plate all over his leg.

McDonald testified that the lighting in the shaft alley was inadequate. Also:

Q. Well, did you see the floor plates that you are contending fell through before you stepped on it?

A. Yes, sir.

Q. Did it appear to be all right?

A. It appeared to be all right to me, as far as I could see.

Q. But yet you know that you fell through that floor plate?

A. Yes, sir, I know I fell through that floor plate.

Q. And when you fell through the floor plate, there was nothing below, I assume, to hold the plate and you except the supports and the tank below which was some three or four feet?

A. I don't know. After I fell through that floor plate, Mr. Bue, I don't remember nothing. The lights went out.

Q. The lights went out as far as you are concerned?

From descriptions of the shaft alley, photographs and plaintiff's testimony, when he fell due to the unsecured steel plate, he first would land on a large pipe and then fall to the bilge area.

Dr. Brown treated plaintiff. On December 7, 1965, the plaintiff had given him a history of an accident late in December of 1964, when employed on the SS CYCLONE. The accident resulted in a small laceration on the right side of his head and a big lump there. His right elbow and right knee were bruised. His right shirt sleeve was torn up the shoulder. Thereafter, he stayed in bed a couple of days, took some aspirin, passed out seven or eight times before the 8th of January, when he was hospitalized in Karachi. This physician detailed his examinations, making the following diagnosis:

1. Cerebral Concussion.

2. Multiple contusions and lacerations, healed.

3. Post traumatic cerebral syndrome, which is a nervous disorder, characterized by nervous irritability, anxiety and by dizziness or blackout spells, by an inability to tolerate alcohol, by an inability to stand heat, and things of that sort and that, in this particular case, the psychic part of Appellee's complaints stemmed from the original brain injury.

4. Possible ulcers of the stomach.

The doctor stated that, in his opinion, these conditions were caused by the accident of December 31, 1964. Dr. Brown saw the plaintiff on September 15, 1965. He also saw him on September 21, 1966, when the plaintiff said he had trouble sleeping and did not trust himself on a foreign voyage. The doctor prescribed taking one and one-half grams Liberal, which is the type of medicine used for epilepsy, related conditions, and as a sedative to provoke sleep and decrease nervousness. The doctor testified that epilepsy is related to the injuries he found in this man, McDonald. The doctor found that, since the injuries of '64, and due to such injuries, McDonald is not very reliable, impatient, and irritable.

The witness, Cole, was a seaman who worked with the plaintiff prior to December 31, 1964, some three or four weeks before plaintiff went to work on the SS

CYCLONE. On other occasions prior to the accident of '64, he worked with the plaintiff side by side. Cole said plaintiff was then a good worker, a conscientious worker. He stated that there was a difference in the plaintiff as he knew him before he went on the SS CYCLONE and afterwards. Before, he was easy to get along with, but after the accident on the SS CYCLONE, he found him to be nervous, would start to cry for no reason at all, did not want to do anything, was depressed, and "might fly off the handle and get mad sometime, * * * he's just not the same man that he was." The evidence shows that, since the accident of December 31, 1964, the plaintiff was irritable, resented authority, was a trouble maker, and the type of man with a record no one would be eager to employ.

■ Plaintiff plainly was most familiar with maritime law affecting seamen, most evasive in his answers, and, as a member of the jury stated he appeared to be a man who "wanted something for nothing." There is a great deal of evidence indicating that the appellee was not worthy of belief (as contended by appellant), but the jurors were the sole judges of the credibility of the witnesses and the weight to be given their testimony. The court cannot substitute itself for a jury in passing on the credibility of a witness.

■ Plaintiff was 37 or 38 years of age at the time of the accident on December 31, 1964. He had a life expectancy of 27 or 28 years. On the SS CYCLONE, plaintiff earned $789.54 from November 25, 1964 to December 31, 1964. He was qualified to act as a bosun and had earned almost $1,000.00 per month when so employed. As a seaman, he could expect to earn about $12,000.00 per year. Subsequent to the accident of December 31, 1964, there is evidence that he was only able to earn $2,500.00 a year because of his physical condition subsequent to the accident. From this evidence, in the light most favorable to the damage award of $50,000.00, which did not include maintenance, we do not find the damage award to be excessive.

■ In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506–508, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), referring to the Jones Act, the court held:

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.

In Continental Oil Company v. Lindley, Tex.Civ.App., 382 S.W.2d 296 (1964, writ ref., n. r. e.), which was a seaman case under the Jones Act, the court, after reviewing a number of authorities on this subject, stated:

The federal courts have broadened the jury function in F.E.L.A. and Jones Act cases so that very little evidence is required to uphold a jury verdict of negligence. Robinson v. Gulf, Colorado & Santa Fe Railway Co., Tex.Civ.App., 1959, 325 S.W.2d 432, writ ref., cert den., 362 U.S. 919, 80 S.Ct. 672, 4 L.Ed.2d 739, and authorities cited. See Deen v. Hickman, 1958, 358 U.S. 57, 79 S.Ct. 1, 3 L.Ed.2d 28, in which the court referred to its prior holding, "that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury." These Supreme Court cases have established that in F.E.L.A. and Jones Act cases the appellate court has no jurisdiction to overturn a jury verdict supported by some evidence of probative force * * *.

■ Appellant contends the maritime doctrine of maintenance and cure does not permit this plaintiff-seaman to recover maintenance under the undisputed facts. He was declared fit for duty about April 1, 1965 and acted on such declaration by shipping on the ship HORACE LUCKENBACH, and thereafter sailed on several vessels named below with the inclusive

date plaintiff worked as crewman. Before sailing on such vessels, plaintiff was required to pass a pre-sign physical examination.

| Name of Vessel | Inclusive Dates As Crewman |
|---|---|
| HORACE LUCKENBACH | 4/12/65–5/21/65 |
| AMOCO CONNECTICUT | 1/6/66–2/4/66 |
| CARBIDE TEXAS CITY | 4/19/66–5/17/66 |
| PURE OIL | 6/21/66–7/7/66 |
| P. C. SPENCER | 8/2/66–8/16/66 |
| SS RICHMOND | 9/8/66–9/12/66 |
| TEXACO MONTANA | 10/29/66–11/12/66 |
| SS GULF TIGER | 11/30/66–12/19/66 |
| EVERGREEN STATE | 3/1/67–4/5/67 |
| FOUR LAKES | 6/9/67–7/11/67 |
| SS R. A. WILSON | August, 1967 (2 days) |

Total days employed on ships—222.

On these vessels, plaintiff was injured numerous times, repeatedly recovered and was found fit for duty by United States Public Health Service Hospitals and at pre-sign physical examinations. After incurring these additional injuries, he claimed and was paid maintenance by the subsequent ship-owners in the amount of $1,064.00. For the injury on December 31, 1964, his treatment was aspirin. The jury found appellee reached his maximum medical recovery on September 18, 1967. His treatment by Dr. Brown was doses of Liberal. The plaintiff never availed himself of cure and maintenance after April 1, 1965, except as to other subsequent injuries for which he made claim and received maintenance payments from such other subsequent shipowner-employers. A seaman is not entitled to maintenance for periods he spends in marine hospitals. There is no showing by the plaintiff-seaman, after being declared fit for duty, that he had medical treatment and care for the specific injury involved. After plaintiff was declared fit for duty and returned to work of his own volition, he cannot recover maintenance and cure when he was not under medical treatment for the specific injury of December 31, 1964, even as an out patient. Pyles v. American Trading & Production Corporation, 372 F.2d 611 (5th Cir., 1967). In the Pyles case, the court held:

A seaman by voluntarily working at his accustomed trade rather than using maintenance and cure to speed his recovery cannot by those tactics enhance the liability of the shipowner any more than the shipowner can be permitted to minimize his liability by refusing to pay and forcing the seaman back to work.

A summary of the principles allowing cure and maintenance are stated in Lewis v. Isthmian Lines, Inc., Tex.Civ.App., 425 S. W.2d 893 (Houston, March 6, 1968) no writ hist.:

One who is injured or becomes ill while serving as a seaman is entitled to maintenance and cure during that period of time in which he is suffering from a curable disability and obtaining curative treatment therefore. This is a right in addition to and apart from his right to recover damages for negligence. That right ceases, however, when the seaman has reached his maximum recovery or ceases to avail himself of curative treatment. A continuation of treatment does not continue the right to maintenance if

that treatment is palliative, only, as distinguished from curative treatment. Farrel v. United States, 336 U.S. 511, 699 S.Ct. 707, 93 L.Ed. 850; Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S. Ct. 651, 82 L.Ed. 993; Rofer v. Head & Head, Inc., 5th Cir., 226 F.2d 927; Ryan v. U. S. Lines Co., 2d Cir., 303 F.2d 430; Stanovich v. Jurlin, 9th Cir., 227 F.2d 245; Desmond v. United States, 217 F.2d 948; Luckenbach Overseas Corp. v. Penland, Tex.Civ.App., 409 S.W.2d 933, writ ref., n. r. e.

To clarify our disposition of this case, we quote from the judgment of the trial court.

* * * it appearing to the Court from the verdict, evidence, stipulations, and pleadings, that the plaintiff is entitled to recover the sum of Fifty Thousand ($50,000.00) Dollars from the defendant, and the further and additional sum of Four Thousand Two Hundred Sixty-Four ($4,264.00) Dollars from the defendant for 533 days maintenance at the rate of Eight ($8.00) Dollars per day, which daily amount has been stipulated by the parties and found by the Court to be the reasonable daily cost of plaintiff's maintenance, and the plaintiff having moved the Court to enter judgment in his favor and against the defendant in the sum of Fifty-Four Thousand Two Hundred Sixty-Four ($54,264.00) Dollars.

The stipulation by the parties was as to the daily amount of $8.00 per day for maintenance. From April 1, 1965 to September 18, 1967 is 900 days. The $50,-000.00 does not include cure and maintenance. The sum of $4,264.00 is for cure and maintenance for 533 days after deducting maintenance and cure paid by others and also deducting days working as a seaman aboard ships, and time in marine hospitals. Pyles v. American Trading & Production Corp., 372 F.2d 611 (5th Cir. 1967); Luckenbach Overseas Corporation v. Penland, Tex.Civ.App., 409 S.W.2d 933

(1967) writ ref., n. r. e.; Socony-Vacuum Oil Co. Inc. v. Aderhold, 150 Tex. 292, 240 S.W.2d 751 (1951).

Appellant's fifth point of error is:

The jury was guilty of prejudicial jury misconduct in that upon their deliberations in reaching their verdict they engaged in certain acts of misconduct, all as set forth in Paragraph V of Appellant's Motion For New Trial.

The trial court made findings of fact and conclusions of law with reference to jury misconduct as follows:

### 1.

I find that during the jury deliberation insurance was mentioned one or two times. That immediately thereafter on each occasion the foreman admonished the jury and every member thereof not to discuss insurance or to consider insurance or to discuss or consider any information that was not presented in evidence in open court in the trial of the case. I find that the jury followed the foreman's admissions and instructions.

### 2.

I furthur [sic] find that at one time one of the attorneys of the case was discussed and immediately thereafter the foreman of the jury admonished and instructed the jury that that particular matter should not be considered or discussed in answering any of the issues and that the jury followed the foreman's admissions and instructions.

### 3.

I do not find as a fact that the jury or any member thereof was prejudiced or biased against the ship owner. I do find that the foreman and each member of the jury was a fair and impartial juror.

### 4.

I furthur [sic] find that as a fact that on two or three occassions [sic] personal experiences were given by several individual jurors concerning catwalks and that each time the foreman of the jury would immediately admonished [sic] the jury that they could not consider any personal experiences. That they could only consider the evidence presented in open court in the case. And I furthur [sic] find that each juror followed the advise [sic] and instructions and admissions of the foreman in this regard.

### 5.

I do not find as a fact the jury or any member thereof considering [sic] the effects of his answers to the special issues when making the said answers or voting on the said answers to the said special issues. On the contrary, I find that the jurors and each member of the jury did not consider or concern himself with the effect of the answers to the special issues.

### 6.

I find that a number of the jury members specifically stated that they did not know who had won the case after their verdict was returned.

### 7.

I find that any and all of the above said actions of jury misconduct was or were not material. I furthur [sic] find as a fact that no member of the jury had any feeling of sympathy or personal bias or personal feeling in the favor of Thomas McDonald, the plaintiff.

### 8.

I further [sic] find as a fact that none of the findings above made resulted in any material error or resulted in the changing of the answer of any previously answered special issue.

### 9.

I furthur [sic] find as a fact that any of the above misconduct considering the evidence on the hearing of the motion and the trial of the case and from the record as a whole did not probably result in injury to the complaining party, namely the defendant herein.

### 10.

I furthur [sic] find that under Rule 328 of the Texas Rules of Civil Procedure that the damages awarded by the jury were not manifestly too large. I therefore conclude that no remittitur should be ordered in the case. I therefore conclude that the defendant's Motion for New Trial should be in all things overruled.

Upon the request of defendant, the trial court made additional findings of fact as follows:

The Court does not find as a fact that one or more of the jurors discussed, during the deliberations, their personal experiences concerning the safety programs at the refineries and other places related to their shoreside employment.

I do find it a fact that one juror mentioned that the catwalk at refineries were usually bolted down. I further find that immediately the foreman admonished and instructed every member of the jury not to further discuss the catwalks at the refineries and that this instruction was followed.

I do not find as a fact that the jury or members thereof discussed the practices of companies, said practice being to not report accidents in order to secure a good safety record.

I do find as a fact that one juror made certain paper models merely to demonstrate and to consider and discuss the testimony of the case, the said paper model

being in the form of floor plates and angle irons on catwalks. This was done to explain and to consider the evidence in the case concerning the catwalks on the ship involved in this litigation. I further find that this was a proper function of the jury, that is; in their right to weigh and discuss and consider the evidence in this case.

I do not find as a fact that one or more of the jurors discussed, during the jury deliberations, their personal experiences concerning the manner in which floor plates and angle irons fit together on the catwalks in the local Jefferson County refineries.

I do not find as a fact that the paper models were made to show to other jurors how catwalks in refineries were constructed.

I do find as a fact and as a conclusion of law that personal experiences and facts concerning the floor of the catwalks, floor plates and angle irons are not and were not matters of common knowledge of everyday affairs, although not discussed.

I do not find as a fact that one or more of the jurors, during the jury deliberation discussed their own personal experiences in signing in blank, various kinds of forms in connection with the plaintiffs version of his signing of the pre-sign-on physical examination forms.

I do not find as a fact that during the deliberations the jurors periodically discussed the issues in small groups out of the hearing of the other jurors.

I further find that each above affirmative act that I have found was immaterial and not material and that it did not probably result in an injustice or unfair trial to the complaining party, the defendant herein.

I further conclude as a matter of law that the defendants motion for new trial should be in all things again overruled.

██ Since misconduct was immediately rebuked every time as it occurred, it was harmless. Rash v. Ross, Tex.Civ.App., 371 S.W.2d 109 (1963) writ refused, n. r. e.; Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493; Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (1945); Martin v. Shell Oil Co., Tex. Civ.App., 262 S.W.2d 564; Trice Contract Carpets & Furniture Co. v. Gilson, 329 S.W.2d 476 (ref. n. r. e.).

██ The trial court found there was no material jury misconduct. It reasonably appears from the evidence, both on the hearing of the motion for new trial of the case and from the record as a whole, that no injury probably resulted to the appellant. Under Rule 327 T.R.C.P., the trial court properly overruled the appellant's motion for new trial. Appellee urges that the judgment of the trial court requires reversal under the doctrine of "cumulative error in jury misconduct from the individual elements of bias, prejudice and sympathy, personal experiences and insurance." Having considered the composite of these elements, appellee's contention is overruled.

All of appellant's points of error, including No. 5, are overruled. Appellant's motion for rehearing overruled.

The judgment of the trial court is affirmed.